FILED
United States Court of Appeals
Tenth Circuit

June 10, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

KIM SEEGMILLER,

Plaintiff,

and

SHARON JOHNSON,

Plaintiff-Appellant,

v.

LAVERKIN CITY; DOUG WILSON,

Defendants-Appellees,

and

HEATH D. JOHNSON,

Defendant.

No. 07-4096

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:05-CV-639-DS)**

---

Submitted on the briefs:[*]

Justin D. Heideman, Ascione, Heideman, and McKay, LLC, St. George, Utah, for Plaintiff-Appellant.

David L. Church, Blaisdell and Church, P.C., Salt Lake City, Utah, for Defendants-Appellees.

———————————

Before **TYMKOVICH**, **BALDOCK**, and **EBEL**, Circuit Judges.

———————————

**TYMKOVICH**, Circuit Judge.

———————————

This case requires us to consider whether a municipality's decision to privately reprimand a police officer for her off-duty sexual conduct violated the Constitution. Because we conclude the reprimand was reasonably related to police department policies, we find no constitutional violation.

Sharon Johnson was an officer with the LaVerkin City, Utah, police department. During an out-of-town training seminar paid for in part by the City, she had an affair with another officer who was not a member of her department. Her husband, incensed by the City's failure to discipline her for this conduct, falsely accused her of also having an affair with the City's police chief, Kim Seegmiller. This resulted in a suspension for her and the Chief and adverse

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

-2-

publicity for the department. After the truth came to light, the City ended the suspension. The City, however, later issued Ms. Johnson an oral reprimand arising from the earlier incident, concluding her personal life interfered with her duties as an officer. She alleges this reprimand led to lost employment opportunities and to her eventual resignation from employment with the City.

Ms. Johnson and Mr. Seegmiller brought a variety of federal civil rights and state tort claims against the City and the City Manager. The district court granted summary judgment against Ms. Johnson on all claims. Her appeal concerns only two of them: a substantive due process claim alleging the reprimand violated her federal constitutional rights; and a negligence claim alleging that the City breached a state law duty of confidentiality regarding her employment.

Because Ms. Johnson failed to show that the City's actions infringed on a fundamental right, we affirm the district court's grant of summary judgment on her substantive due process claim. We also affirm summary judgment on her negligence claim.

## I. Background

Ms. Johnson worked as a police officer for the City, and was also employed as a member of the SWAT team for Washington County, Utah. In March 2003, she separated from her husband and initiated divorce proceedings. Mr. Johnson

reacted by threatening to kill himself and to kill Ms. Johnson. He also violated the terms of a protective order she had obtained.

While her divorce proceedings were pending, the City sent Ms. Johnson to a training conference in Midway, Utah, to refresh and improve her abilities as a police officer. During the conference, after training sessions had ended for the day, Ms. Johnson had a brief affair with an officer from another department who was also attending the conference.

Her estranged husband somehow learned of the affair. In response, he falsely reported to her supervisors in the department that she had been raped while attending the conference. Her immediate supervisor, Police Chief Kim Seegmiller, investigated the allegation and quickly learned from Ms. Johnson that the affair had been consensual.

At this point, Chief Seegmiller took no disciplinary action against Ms. Johnson for her conduct at the conference. His failure to do so apparently frustrated Mr. Johnson, who made a second false allegation—that Ms. Johnson and Chief Seegmiller had also engaged in a sexual relationship. This allegation was communicated to a LaVerkin City Council member. Mr. Johnson also filed a written complaint with the City in which he alleged that because of their affair, Chief Seegmiller was favoring Ms. Johnson with regard to job rules and procedures and was unjustly pursuing domestic violence charges against him.

During a subsequent closed-door meeting in July 2003, the City Council voted to place Ms. Johnson and Chief Seegmiller on administrative leave while it independently investigated the allegations. Washington County also asked Ms. Johnson to step down from her SWAT Team position until the matter was cleared up. News of the matter leaked, however, and a story about the Council's action was printed on the front page of the local newspaper. Ms. Johnson alleges that stories concerning the City's action also appeared in other newspapers, and were broadcast on radio and television stations throughout the state of Utah.

On July 23, 2003, four days after the Council voted to place Ms. Johnson and Chief Seegmiller on administrative leave, Mr. Johnson recanted his allegations and notified a councilman and the City Manager that they were false. Despite his recantation, Ms. Johnson and Chief Seegmiller remained on administrative leave until the Council's August 6, 2003, meeting. During that meeting, Mr. Johnson stood up and publicly apologized for the false allegations. The Council then reinstated Ms. Johnson and Chief Seegmiller.

That did not end the matter, however. Based on its own investigation into Mr. Johnson's allegations, the Council learned of Ms. Johnson's affair at the training conference. The Council's investigator recommended that Ms. Johnson receive a written reprimand over the incident, to which the Council agreed. The City Manager was ordered to issue the reprimand.

When the City Manager met with Ms. Johnson to discuss the matter, she refused to sign the written reprimand. Deciding not to push the matter, the City Manager tore up the written reprimand, and instead issued an oral reprimand with essentially the same terms.

Although it was not formally recorded, the parties do not dispute the content of the reprimand. First, it was based on a provision in the law enforcement code of ethics requiring officers to "keep [their] private life unsullied as an example to all and [to] behave in a manner that does not bring discredit to [the officer] or [the] agency." Aplt. App., Vol. II, at 337. On this basis, the reprimand stated Ms. Johnson had allowed "her personal life [to] interfere with her duties as an officer by having sexual relations with an officer from Washington County while attending a training session out of town which was paid for in part by LaVerkin City." *Id.*, Vol. I, at 166. Second, it admonished Ms. Johnson to "avoid the appearance of impropriety" and to "take care to conduct [herself] in the future in a manner that will be consistent with the city policies and the police department policies." *Id.* (depo. p. 82). Finally, it warned her that "[f]urther violations will lead to additional discipline up to and including termination." *Id.*

Upon reinstatement with the City, Ms. Johnson also sought reinstatement with the Washington County SWAT Team. As a condition of reinstatement, the County required her to obtain a letter stating that she was in good standing with

the City and was no longer on administrative leave. The City, however, only supplied a letter that stated she was no longer on administrative leave. [*Id.* at 28 ¶ 105.] Upon receiving this letter, Washington County decided not to reinstate Ms. Johnson as a member of its SWAT team.

A few months later, believing that her credibility as a police officer had been seriously undermined by the City's actions, Ms. Johnson resigned her position with the LaVerkin City police department.

Ms. Johnson brought this action against various Defendants, including the City and the City Manager, alleging various causes of action under state law and violations of her federal constitutional rights. She appeals only from the district court's order granting summary judgment (1) on her claim that the City's actions in issuing the reprimand violated her right to substantive due process, and (2) on her negligence claim.

## II. Analysis

Ms. Johnson claims the City violated her constitutional rights by orally reprimanding her for private, off-duty conduct and breached its state law duty of confidentiality to her by negligently leaking information about the conduct to the local press.

## A.  Standard of Review

"We review de novo the district court's summary judgment decision, applying the same standard as the district court."  *Butler v. Compton*, 482 F.3d 1277, 1278 (10th Cir. 2007).  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  We examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party.  *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006).  Finally, we may affirm on any basis supported by the record, even though not relied on by the district court.  *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1163 n.17 (10th Cir. 2004).

## B.  Substantive Due Process Claim

### 1.  Legal Standard

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const., amend. 14, § 1.  As the Supreme Court has explained, the Due Process Clause "guarantees more than fair process."  *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997). The Clause "cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them." *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quotation omitted).

-8-

In its substantive mode, the Fourteenth Amendment provides protection against arbitrary and oppressive government action, even when taken to further a legitimate governmental objective. *Id.* at 845–46.

The Supreme Court has described two strands of the substantive due process doctrine. One strand protects an individual's fundamental liberty interests, while the other protects against the exercise of governmental power that shocks the conscience. *See Chavez*, 538 U.S. at 787 (Stevens, J., concurring in part and dissenting in part) ("The Due Process Clause of the Fourteenth Amendment protects individuals against state action that either 'shocks the conscience,' or interferes with [fundamental] rights 'implicit in the concept of ordered liberty'" (citations omitted)).

A fundamental right or liberty interest is one that is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Chavez v. Martinez*, 538 U.S. 760, 775 (2003). Without these rights, "neither liberty nor justice would exist." *Palko v. Connecticut*, 302 U.S. 319, 325 (1937). Because of their importance, fundamental liberty interests are preciously guarded. "[T]he Fourteenth Amendment forbids the government to infringe fundamental liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Glucksberg*, 521 U.S. at 721 (internal quotations and ellipsis omitted).

Conduct that shocks the judicial conscience, on the other hand, is deliberate government action that is "arbitrary" and "unrestrained by the established principles of private right and distributive justice." *Lewis*, 523 U.S. at 846 (quoting *Hurtado v. California*, 110 U.S. 516, 527 (1884)). This strand of substantive due process is concerned with preventing government officials from "abusing their power, or employing it as an instrument of oppression." *Id.* (internal marks omitted). Not all governmental conduct is covered, however, as "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.*

By satisfying either the "fundamental right" or the "shocks the conscience" standards, a plaintiff states a valid substantive due process claim under the Fourteenth Amendment. Nevertheless, in this case the City Defendants argue, and the district court found, that the *only* appropriate standard with which to measure Ms. Johnson's claim is the shocks the conscience standard. Aplt. App., Vol. II, at 312. The district court erred in adopting the Defendants' position.

The district court and City Defendants make the same legal error: compartmentalizing the substantive due process cases of this court and the Supreme Court based on whether the governmental conduct complained of was "executive" or "legislative." Although some precedential support exists for the executive versus legislative distinction, an overly rigid demarcation between the

two lines of cases is neither warranted by existing case law nor helpful to the substantive analysis.

In *County of Sacramento v. Lewis*, for example, the Supreme Court alluded to a distinction between substantive due process claims based on executive versus legislative action. The Court wrote, "While due process protection in the substantive sense limits both what the government may do in both its legislative and its executive capacities, criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue." 523 U.S. at 846 (citations omitted). Nowhere in that opinion or elsewhere, however, did the Court establish an inflexible dichotomy. This makes good sense, for the distinction between legislative and executive action is ancillary to the real issue in substantive due process cases: whether the plaintiff suffered from governmental action that either (1) infringes upon a fundamental right, or (2) shocks the conscience.

The district court concluded that the "shocks the conscience" test should only be applied to executive action, while the fundamental rights approach should only be used in cases challenging legislative action. *See, e.g.*, *Seegmiller v. LaVerkin City*, No. 05-639, 2007 WL 869230, at *4 (D. Utah Mar. 20, 2007) (describing the labels of executive and legislative as "essential" to the substantive due process analysis). As illustrated by *Chavez v. Martinez*, 538 U.S. 760 (2003), the Supreme Court has not taken this approach.

-11-

In *Chavez*, a three-justice plurality[1] of the Court analyzed the plaintiff's claim under both the fundamental rights strand and the shocks the conscience strand of substantive due process. Despite the governmental conduct at issue being "executive" in nature, both strands were recited and applied. The plurality first considered whether a police officer's persistent questioning of a seriously wounded suspect to extract a confession shocked the conscience, concluding it did not. 538 U.S. at 774–75 (holding officer's behavior was not "egregious" or "conscience shocking"). But the plurality did not stop there. Rather, it proceeded to examine whether the officer's conduct violated any fundamental liberty interest held by the suspect. Once again, the plurality found no substantive due process violation. *Id.* at 775–76 (holding defendant's asserted liberty interest—freedom from aggressive questioning—was not "so fundamental that is cannot be abridged absent a 'compelling state interest.'").

Moreover, despite the governmental action in question being "executive," three additional justices also employed a fundamental rights analysis. Justice Kennedy, in an opinion joined by Justices Stevens and Ginsburg, said the use of torture (or the equivalent) to compel a suspect to provide a statement implicated a fundamental liberty interest. *Id.* at 796, 799 (Kennedy, J., concurring in part and dissenting in part). Thus, six justices agreed the fundamental rights strand of

---

[1] Justice Thomas wrote the opinion, and was joined by Chief Justice Rehnquist and Justice Scalia.

substantive due process applied to a claim involving executive action. Clearly, there is no hard-and-fast rule requiring lower courts to analyze substantive due process cases under only the fundamental rights or shocks the conscience standards. *See id.*; *United States v. Stein*, 495 F. Supp. 2d 390, 411-12 & n.95 (S.D.N.Y. 2007) (noting uncertainty about *County of Sacramento* framework created by *Chavez*).

A recent case from the Tenth Circuit, *Dubbs v. Head Start, Inc.*, 336 F.3d 1194 (10th Cir. 2003), is also instructive. In *Dubbs*, parents of children in a Head Start program alleged that their children were subjected to intrusive physical examinations on school property without the parents' notice or consent. The parents claimed a violation of their fundamental rights to privacy and to the care and custody of their children. *Id.* at 1202. The district court dismissed the parents' claims, concluding that the alleged conduct "did not rise to conscience shocking level." *Id.* This court reversed and remanded, stating that the district court had committed legal error by failing to examine the plaintiffs' claims under the second substantive due process strand—fundamental rights. We noted that,

> While the "shocks the conscience" standard applies to tortious conduct challenged under the Fourteenth Amendment it does not exhaust the category of protections under the Supreme Court's substantive due process jurisprudence, or eliminate more categorical protection for "fundamental rights" as defined by the tradition and experience of the nation.

*Id.* at 1203 (citation omitted).

-13-

In sum, as we see it, the "shocks the conscience" and "fundamental liberty" tests are but two separate approaches to analyzing governmental action under the Fourteenth Amendment. They are not mutually exclusive, however. Courts should not unilaterally choose to consider only one or the other of the two strands. Both approaches may well be applied in any given case. *See, e.g.*, *Dias v. City and County of Denver, Colo.*, No. 07-722, 2008 WL 791939, at *9–10 (D. Colo. Mar. 20, 2008) (considering a municipal ordinance under both the "shocks the conscience" and "fundamental liberty" tests). Of course, if one strand is wholly inapt, then a court need not waste much time analyzing the claim under that framework.

## 2. Application

As framed, Ms. Johnson alleges an infringement of a fundamental liberty interest. She claims the City Defendants' actions infringed on her fundamental liberty interest in sexual privacy. As we discuss below, Ms. Johnson has not made out a substantive due process claim under the "fundamental rights" strand of the substantive due process doctrine.[2]

We undertake the fundamental rights analysis in two steps. First, we must "careful[ly] descri[be] . . . the asserted fundamental liberty interest." *Glucksberg*, 521 U.S. at 721 (internal quotation omitted); *see also Chavez*, 538 U.S. at 775–76

---

[2] We have no qualms agreeing with the district court that the City's conduct would not meet the requirements of the shocks the conscience test.

-14-

(noting plaintiff must put forth "a 'careful description' of the asserted fundamental liberty interest for the purposes of substantive due process analysis; vague generalities . . . will not suffice."). Second, we must decide whether the asserted liberty interest, once described, is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id.* (internal quotations omitted); *see also Williams v. Att'y Gen. of Ala.*, 378 F.3d 1232, 1239 (11th Cir. 2004) (describing the *Glucksberg* test and applying it to conclude no fundamental right existed "to use sexual devices when engaging in lawful, private, sexual activity").

Broadly speaking, no one disputes a right to be free from government interference in matters of consensual sexual privacy. But as the case law teaches us, *Glucksberg*, 521 U.S. at 721, a plaintiff asserting a substantive due process right must both (1) carefully describe the right and its scope; and (2) show how the right as described fits within the Constitution's notions of ordered liberty.

We begin with the "careful description" requirement. A broadly-defined "right to private sexual activity" will clearly not suffice. The Supreme Court has never identified such a right at that level of generality. *See Williams*, 378 F.3d at 1236 ("Although many of the Court's 'privacy' decisions have implicated sexual matters, the Court has never indicated that the mere fact that an activity is sexual and private entitles it to protection as a fundamental right." (internal citations

-15-

omitted)). To be sure, a variety of cases involve fundamental privacy rights. The recognition of a broad notion of privacy, for example, has led to the establishment of the more narrowly defined right of married couples to obtain and use contraceptives. *See Griswold v. Connecticut*, 381 U.S. 479, 485–86 (1965) (finding in the right to privacy a more specific freedom of married couples to use contraceptives). But the Court has never endorsed an all-encompassing right to sexual privacy under the rubric of substantive due process. *See, e.g.*, *Williams*, 378 F.3d at 1236.

Ms. Johnson provides a slightly more narrow description when she asserts the City violated her fundamental liberty interest "to engage in a private act of consensual sex." Aplt. Br. 36. We doubt that this description "narrowly and accurately reflect[s] the right that she seeks to vindicate." *Raich v. Gonzales*, 500 F.3d 850, 864 (9th Cir. 2007). We note that the oral reprimand of which she complains stated "her personal life interfere[d] with her duties as an officer *by having sexual relations with an[other] officer*." Aplt. App., Vol. I, at 166 (emphasis added). While she asserts a broad right to sexual freedom, a more precise view of her complaint is that the police department reprimand was based on her off-duty conduct with a fellow officer at a training conference paid for in part and supported by the department.

Ms. Johnson fails to show that the right thus asserted is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of

-16-

ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Glucksberg*, 521 U.S. at 721 (internal quotations omitted). While claiming a fundamental constitutional right, Ms. Johnson points to no historical antecedents to establish her claim. Instead, she relies on the fact that the City Defendants did not dispute that her asserted interest was a fundamental right. Aplt. Br. 28. But this lack of opposition is not sufficient for us to conclude the right asserted here amounts to a fundamental right. Ms. Johnson has therefore failed to carry her burden of proving the liberty interest she seeks is so fundamental that it must be protected through a heightened scrutiny analysis.

The Supreme Court and other circuit court precedent support this outcome. In counseling restraint under the fundamental rights analysis, the Supreme Court instructs that recognizing such rights, "to a great extent, place[s] the matter outside the arena of public debate and legislative action" and risks transforming the Due Process Clause "into the policy preferences of the Members of [the] Court." *Glucksberg*, 521 U.S. at 720.

"[I]dentifying a new fundamental right subject to the protections of substantive due process is often an uphill battle, as the list of fundamental rights is short." *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007) (quotations omitted). The Court thus far has recognized fundamental liberty interests to consist primarily of those relating to marriage, family life, child rearing, and reproductive choices. These liberty interests include the right to marry, to have children, to

-17-

direct the education and raising of one's own children, to marital privacy, to use contraception and obtain abortion, and to bodily integrity. *Id.* However, as the Court made clear in *Glucksberg*, "[not] all important, intimate, and personal decisions are . . . protected [by substantive due process]." *Id.*

One of the Court's most recent opinions concerning substantive due process also counsels against finding a broad-based fundamental right to engage in private sexual conduct. In *Lawrence v. Texas*, 539 U.S. 558 (2003), the Court struck down a Texas law that criminalized homosexual sodomy. But nowhere in *Lawrence* does the Court describe the right at issue in that case as a fundamental right or a fundamental liberty interest. It instead applied rational basis review to the law and found it lacking. *Lawrence*, 539 U.S. at 578 (stating the Texas statute in question "furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual"); *see also id.* at 594 (Scalia, J., dissenting) (noting that majority applied "rational basis" test to overturn statute). As one recent decision aptly noted, the Court declined "to recognize a fundamental right to sexual privacy . . . where petitioners and *amici* expressly invited the [C]ourt to do so." *Williams*, 378 F.3d at 1236.

Nor did the *Lawrence* Court conclude that an even more general right to engage in private sexual conduct would be a fundamental right. *See id.*; *see also Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 745 n.32 (5th Cir. 2008) (explaining "*Lawrence* did not categorize the right to sexual privacy as a

fundamental right"); *Muth v. Frank*, 412 F.3d 808, 817 (7th Cir. 2005) (holding "*Lawrence* . . . did not announce . . . a fundamental right, protected by the Constitution, for adults to engage in all manner of consensual sexual conduct"); *Lofton v. Sec. of Dept. of Children and Family Servs.*, 358 F.3d 804, 817 (11th Cir. 2004) ("We conclude that it is a strained and ultimately incorrect reading of *Lawrence* to interpret it to announce a new fundamental right.").

Indeed, as we noted above the Court resolved the constitutionality of Texas's sodomy law in *Lawrence* by applying the rational basis test, rather than heightened scrutiny. *See Lawrence*, 539 U.S. at 578. If a fundamental right were at stake, only heightened scrutiny would have been appropriate. *See, e.g.*, *Glucksberg*, 521 U.S. at 721 (noting the government may not infringe a fundamental liberty interest "unless the infringement is narrowly tailored to serve a compelling state interest." (quotation omitted)); *Okla. Educ. Ass'n v. Alcoholic Bev. Laws Enforce. Comm'n*, 889 F.2d 929, 932 (10th Cir. 1989) ("We will apply strict scrutiny . . . if the state law impinges upon fundamental rights protected by the Constitution.").

Ms. Johnson has not demonstrated she possesses a fundamental right that was infringed by the government in this case. Ms. Johnson's generalized right as framed in her complaint does not satisfy the careful scrutiny mandated by the Supreme Court in its substantive due process cases. *See Glucksberg*, 521 U.S. at 721. Absent a fundamental right, the state may regulate an interest pursuant to a

validly enacted state law or regulation rationally related to a legitimate state interest. *See Reno v. Flores*, 507 U.S. 292, 305 (1993) ("[N]arrow tailoring is required only when fundamental rights are involved."). We therefore must consider whether Ms. Johnson's reprimand was unconstitutional under the less-exacting standards of rational basis review.

Our rational basis review is highly deferential toward the government's actions. The burden is on the plaintiff to show the governmental act complained of does not further a legitimate state purpose by rational means. *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004).

Given our highly deferential review, we conclude Ms. Johnson has failed to meet her burden of establishing a constitutional deprivation. It is well-settled that a police department may, "in accordance with its well-established duty to keep peace, [place] demands upon the members of the police force . . . which have no counterpart with respect to the public at large." *Kelley v. Johnson*, 425 U.S. 238, 245 (1976); *see also Shawgo v. Spradlin*, 701 F.2d 470, 483 (5th Cir. 1983) (holding, under rational basis review, that a police department's prohibition of off-duty dating and cohabitation did not violate police officer's rights).

The LaVerkin law enforcement code of ethics requires officers to "keep [their] private life unsullied as an example to all and [to] behave in a manner that does not bring discredit to [the officer] or [the] agency." Aplt. App., Vol. II at 337. The reprimand directed Ms. Johnson to "avoid the appearance of

-20-

impropriety" and to "take care to conduct [herself] in the future in a manner that will be consistent with the city policies and the police department policies." *Id.* We think it reasonable for the police department to privately admonish Ms. Johnson's personal conduct consistent with its code of conduct when the department believes it will further internal discipline or the public's respect for its police officers and the department they represent.

In several other cases, courts likewise have found governmental actions restricting police officers' sexual conduct were reasonable. *See, e.g.*, *Hughes v. City of N. Olmsted*, 93 F.3d 238, 242 (6th Cir. 1996) (holding police department acted reasonably by investigating officer "because of claims that he had committed acts of sexual misconduct while on duty, an accusation which certainly related to whether [officer] was conducting himself appropriately as a police officer"); *Fugate v. Phoenix Civil Servs. Bd.*, 791 F.2d 736, 741 (9th Cir. 1986) (declining to find that "the right of privacy extends to sexual behavior that is not purely private, that compromises a police officer's performance, and that threatens to undermine a police department's internal morale and community reputation"); *cf. Thorne v. City of El Segundo*, 802 F.2d 1131, 1138–40 (9th Cir. 1986) (granting qualified immunity to defendants because constitutional violation of officer's rights by "unregulated, unrestrained employer inquiries into personal, sexual matters that have no bearing on job performance" of officer was not

clearly established when defendants acted, noting "continued disagreement about the nature and scope of constitutional protection").

Because Ms. Johnson's asserted right is not fundamental, we conclude the City only needed—and had—a rational basis for restricting it and concluding her conduct interfered with her duties as a police officer. The district court therefore properly granted summary judgment for Defendants on Ms. Johnson's substantive due process claim.

## C. Negligence Claim

Ms. Johnson also appeals the district court's grant of summary judgment on her state-law negligence claim. The district court concluded that Defendants were immune from liability unless Ms. Johnson's claim fell under a waiver of immunity contained in the Utah Governmental Immunity Act. *See, e.g.*, *Wagner v. State*, 122 P.3d 599, 603 (Utah 2005). Ms. Johnson contends that her claim falls under the general waiver for injuries caused by negligent misconduct of the City's officer's and employees. Utah Code Ann. § 63-30d-301(4). Even where immunity is waived, however, "there can be no liability absent a breach of a common law duty owed to the plaintiff." *Ledfors v. Emery County Sch. Dist.*, 849 P.2d 1162, 1164 (Utah 1993).

Ms. Johnson's negligence claim is not a model of clarity, but it appears that she charges Defendants with failing to investigate the allegations made against her before placing her on administrative leave, and then failing to maintain the

confidentiality of the investigation into her sexual conduct.  Aplt. App., Vol. I, at

35-36.  On appeal, she focuses on Defendants' alleged breach of confidentiality.[3]

Utah does recognize a duty applicable to employers not to publicly disclose

embarrassing private facts concerning their employees.  *See, e.g.*, *Shattuck-Owen*

*v. Snowbird Corp.*, 16 P.3d 555, 558 (Utah 2000).  But to satisfy the requirements

for liability on this basis, a plaintiff must show that the employer publicly

disclosed the embarrassing facts.  *See id.*  The City argues that summary judgment

is appropriate on this claim because "[t]here is no evidence that the City made

the allegations a matter of public record or discussion."  Aplee. Br. at 18.

Ms. Johnson responds that the allegations "became public knowledge" and "made

front page news in the local newspaper."  Aplt. Opening Br. at 6.  What is

missing is any evidence that this alleged public disclosure was made by the City

Defendants or can be attributed to them.

Ms. Johnson was asked at her deposition whether, apart from a disclosure

that occurred during a telephone call between one of her friends and the City's

---

[3]  The district court determined that Ms. Johnson failed to demonstrate that the City Defendants owed her a duty other than that owed to the general public.  Aplt. App., Vol. II, at 308-09 (applying *Day v. State ex rel. Utah Dep't of Public Safety*, 980 P.2d 1171, 1175 (Utah 1999)).  For this so-called "public duty doctrine" to apply, however, we would have to determine that the City owed no special duty to its employees, as opposed to the public at large, in maintaining the confidentiality of investigations.  The City's Employee Code of Conduct belies a finding to this effect; it provides that "employees have an unquestionable right to expect all personal information about themselves, their illness, their family and financial circumstances to be kept confidential."  *Id.* at 407.

mayor, she knew of "any other city official or city employee who told anybody that [she was allegedly having an affair with chief Seegmiller]?" Aplt. App., Vol. II, at 327 (depo. p. 43). She replied "no." *Id.* She also stated that she had no evidence that the City Manager ever told anyone about the allegation. *Id.* This being the case, she has failed to establish her tort claim against the City Defendants, and summary judgment was appropriately granted on this claim.

### III. Conclusion

The judgment of the district court is AFFIRMED.