RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0307p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

PAUL D. LOWE,

　　　　　*Petitioner-Appellant,*

　　　*v.*

STARK COUNTY SHERIFF, Timothy A.
Swanson,

　　　　　*Respondent-Appellee.*

No. 09-3942

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 08-00686—Donald C. Nugent, District Judge.

Argued: October 4, 2011

Decided and Filed: December 8, 2011

Before: KEITH, GRIFFIN, and STRANCH, Circuit Judges.

_____

### COUNSEL

_____

**ARGUED:** J. Dean Carro, UNIVERSITY OF AKRON SCHOOL OF LAW, Akron,
Ohio, for Appellant. Ross A. Rhodes, STARK COUNTY PROSECUTOR'S OFFICE,
Canton, Ohio, for Appellee. **ON BRIEF:** J. Dean Carro, UNIVERSITY OF AKRON
SCHOOL OF LAW, Akron, Ohio, for Appellant. Ross A. Rhodes, STARK COUNTY
PROSECUTOR'S OFFICE, Canton, Ohio, for Appellee.

_____

### OPINION

_____

　　　GRIFFIN, Circuit Judge. Petitioner Paul Lowe appeals the district court's denial
of his petition for a writ of habeas corpus, arguing that the Ohio Supreme Court
unreasonably applied federal law as clearly established by the Supreme Court in

1

*Lawrence v. Texas*, 539 U.S. 558 (2003), when it upheld his incest conviction for engaging in sexual conduct with his stepdaughter.  We disagree and therefore affirm.

I.

Lowe was charged with one count of sexual battery for engaging in sexual conduct by means of sexual intercourse with his 22-year-old stepdaughter, in violation of Ohio Rev. Code § 2907.03(A)(5), which makes it a crime to "engage in sexual conduct with another, not the spouse of the offender, when . . . [t]he offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person."  Lowe moved to dismiss the charge in the trial court, arguing that the facts alleged in the indictment did not constitute an offense under Ohio Rev. Code § 2907.03(A)(5) because there was a "clear legislative intent to have the law apply to children, not adults";[1]  Lowe also argued that the statute was unconstitutional as applied to him because the government had no legitimate interest in regulating sexual activity between consenting adults.  *See State v. Lowe*, 861 N.E.2d 512, 514 (Ohio 2007).  The court disagreed and overruled his motion.  Thereafter, Lowe pled no contest to the charge and was sentenced to 120 days of incarceration and three years of community control and was classified as a sex offender.  *Id.*

The Ohio Court of Appeals upheld Lowe's conviction on direct review.  It concluded that Ohio Rev. Code § 2907.03(A)(5) prohibits sexual conduct between a stepparent and stepchild regardless of the stepchild's age and found that Lowe "d[id] not have a constitutionally protected right to engage in sex with his stepdaughter." *State v. Lowe*, No. 2004CA00292, 2005 WL 1983964, at *2 (Ohio Ct. App. Aug. 15, 2005) (unpublished).  On discretionary review, the Ohio Supreme Court also affirmed.  *Lowe*, 861 N.E.2d at 518.  It determined that "*Lawrence* did not announce a 'fundamental' right to all consensual adult sexual activity, let alone consensual sex with one's adult children or stepchildren" and that "the statute in *Lawrence* was subjected to a rational-basis rather than a strict-scrutiny test . . . ." *Id.* at 517.  Accordingly, the court held that Lowe's

---

[1]In general, the age of sexual consent in Ohio is sixteen, Ohio Rev. Code § 2907.04(A), while the age of majority is eighteen.  Ohio Rev. Code § 3109.01.

conviction was constitutional because "as applied in this case, R.C. 2907.03(A)(5) bears a rational relationship to the legitimate state interest in protecting the family . . . from the destructive influence of sexual relationships between parents or stepparents and their children or stepchildren." *Id.* at 518.

Lowe then filed a 28 U.S.C. § 2254 petition for habeas relief with the federal district court, arguing that the Ohio Supreme Court unreasonably applied federal law as clearly established by the Supreme Court in *Lawrence*. The magistrate judge issued a report and recommendation to deny Lowe's petition, concluding that the Ohio Supreme Court's decision was not unreasonable because, as evidenced by a split among the federal circuits, *Lawrence* was not clear as to the nature of the right it considered or the standard of review it applied to the Texas statute. *See Lowe v. Swanson*, 639 F. Supp. 2d 857, 859 (N.D. Ohio 2009). The district court adopted the magistrate judge's report and recommendation and denied the petition. *Id.* at 860. We subsequently granted Lowe's request for a certificate of appealability, explaining that "the conflicting authority by our sister circuits establishes that the issues presented by this habeas petition are substantial and warrant further review."

## II.

We review the district court's habeas decision de novo. *Souter v. Jones*, 395 F.3d 577, 584 (6th Cir. 2005). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits federal habeas review of state court proceedings and provides that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008).

A state court adjudication is "contrary to" Supreme Court precedent under § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite result]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application" clause of § 2254(d)(1), habeas relief is available if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case[,]" or if a "state court decision either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Harris*, 526 F.3d at 909 (citations and internal quotation marks omitted). "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous," but rather "must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citations omitted); *see also Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).

III.

Lowe argues that he is entitled to habeas relief because the Ohio Supreme Court "unreasonably applied the federal law announced in *Lawrence*." According to Lowe, the Ohio Supreme Court "made the same mistake as the *Bowers* Court by framing the issue as 'whether [Mr.] Lowe is guaranteed a fundamental right to engage in sexual intercourse with his consenting adult stepdaughter," rather than framing the issue more broadly as "the recognition of the right, as between consenting adults, to engage in private sexual conduct." *See Lowe*, 861 N.E.2d at 516; *see also Lawrence*, 539 U.S. at 578 (quoting *Bowers v. Hardwick*, 478 U.S. 186, 216 (1986) (Stevens, J., dissenting) (opining that "individual decisions by married [or unmarried] persons, concerning the intimacies of their physical relationship . . . are a form of 'liberty' protected by the Due Process Clause of the Fourteenth Amendment . . .")) (footnotes and citations omitted). Lowe also contends that this broad right is a fundamental one requiring strict scrutiny

because of the *Lawrence* Court's citations to fundamental rights cases and its references to "the right to make certain decisions regarding sexual conduct," a person's interest in making "certain fundamental decisions affecting her destiny," and the "emerging awareness that liberty gives substantial protection to adult persons in deciding how to conduct their private lives in matters pertaining to sex." *See Lawrence*, 539 U.S. at 565, 572.

Lowe's arguments have some support. In *Cook v. Gates*, 528 F.3d 42 (1st Cir. 2008), the First Circuit, considering a challenge by members of the United States Armed Forces who claimed that the "Don't Ask, Don't Tell" statute, 10 U.S.C. § 654 (2007), violated their substantive due process rights, found that *Lawrence* announced a broad Fourteenth Amendment right to sexual privacy. The court noted that "[t]he *Lawrence* Court characterized the constitutional question as 'whether petitioners' criminal convictions for adult consensual sexual intimacy in the home violate their vital interests in liberty and privacy protected by the Due Process Clause'"; and it further explained that "[t]aking into account the precedent relied on by *Lawrence*, the tenor of its language, its special reliance on Justice Stevens' *Bowers* dissent, and its rejection of morality as an adequate basis for the law in question, we are convinced that *Lawrence* recognized that adults maintain a protected liberty interest to engage in certain 'consensual sexual intimacy in the home.'" *Id.* at 49, 53. The Fifth Circuit came to a similar conclusion in *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738 (5th Cir. 2008), asserting that "[t]he right the Court recognized [in *Lawrence*] was not simply a right to engage in the sexual act itself, but instead a right to be free from governmental intrusion regarding 'the most private human contact, sexual behavior.'" *Id.* at 744.

Also, were *Lawrence* applicable, there is authority for Lowe's position that a heightened standard, greater than a rational basis, may govern. Again, Lowe relies on *Cook*, where the First Circuit held that *Lawrence* "applies a standard of review that lies between strict scrutiny and rational basis" because it "balanced the strength of the state's asserted interest in prohibiting immoral conduct against the degree of intrusion into the petitioners' private sexual life caused by the statute in order to determine whether the

law was unconstitutionally applied." *Cook*, 528 F.3d at 56.  In *Witt v. Dep't of the Air Force*, 527 F.3d 806 (9th Cir. 2008), the Ninth Circuit also considered the "Don't Ask, Don't Tell" policy post-*Lawrence* and concluded that the *Lawrence* Court must have applied something more stringent than rational basis review.  It noted that the Supreme Court rejected *Bowers* not because the *Bowers* Court wrongly held that the statute at issue satisfied rational basis review, but because of "'the Court's own failure to appreciate the extent of the liberty at stake,'" *id.* at 813 (quoting *Lawrence*, 539 U.S. at 567); that "the cases on which the Supreme Court explicitly based its decision in *Lawrence* are based on heightened scrutiny"; and that "[w]ere the Court applying rational basis review, it would not [have] identif[ied] a legitimate state interest to 'justify' the particular intrusion of liberty at issue[,]" *id.* at 817.

Other circuit courts, however, have concluded just the opposite.  In *Seegmiller v. LaVerkin City*, 528 F.3d 762 (10th Cir. 2008), the Tenth Circuit considered a plaintiff's claim that her employer, LaVerkin City, Utah, and its agents, "violated her fundamental liberty interest to 'engage in a private act of consensual sex.'" *Id.* at 770 (citation omitted).  The court noted that "[b]roadly speaking, no one disputes a right to be free from government interference in matters of consensual sexual privacy. But as the case law teaches us, a plaintiff asserting a substantive due process right must both (1) carefully describe the right and its scope; and (2) show how the right as described fits within the Constitution's notions of ordered liberty." *Id.* at 769 (citing *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)).  Applying that standard, the court concluded that *Lawrence* did not announce a fundamental right, noting that "nowhere in *Lawrence* does the Court describe the right at issue in that case as a fundamental right or a fundamental liberty interest. It instead applied rational basis review to the law and found it lacking." *Id.* at 771 (citing *Lawrence*, 539 U.S. at 578 (stating that the Texas statute in question "furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual") and *id.* at 594 (Scalia, J., dissenting) (asserting that the majority applied the "rational-basis test" to overturn the statute)).

The Court of Appeals for the Eleventh Circuit has similarly construed *Lawrence*. In *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804 (11th Cir. 2004), *cert. denied*, 543 U.S. 1081 (2005), it held that "it is a strained and ultimately incorrect reading of *Lawrence* to interpret it to announce a new fundamental right" when the *Lawrence* opinion "contains virtually no inquiry into the question of whether the petitioners' asserted right is one of those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty . . ."; "never provides the careful description of the asserted fundamental liberty interest that is to accompany fundamental-rights analysis"; and "[m]ost significant[ly] . . . never applied strict scrutiny, the proper standard when fundamental rights are implicated, but instead invalidated the Texas statute on rational basis grounds . . . ." *Id.* at 816-17 (citations and internal quotation marks omitted); *see also Williams v. Att'y Gen. of Ala.*, 378 F.3d 1232, 1237 (11th Cir. 2004) ("As we noted in *Lofton*, we are not prepared to infer a new fundamental right from an opinion that never employed the usual *Glucksberg* analysis for identifying such rights. Nor are we prepared to assume that *Glucksberg*–a precedent that *Lawrence* never once mentions–is overruled by implication.") (citation omitted).

In the present case, as the magistrate judge and district court correctly concluded, this split of authority provides strong support under AEDPA to affirm the decision of the Ohio Supreme Court. In light of the disagreement among the circuits and the well-reasoned authority in favor of respondent, we hold that the Ohio Supreme Court did not unreasonably apply clearly established federal law in reviewing Ohio Rev. Code § 2907.03(A)(5) for a rational basis. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (explaining that "[b]ecause our cases give no clear answer to the question presented, let alone one in [the defendant's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law") (internal quotation marks and alterations omitted); *id.* at 128 (Stevens, J., concurring) ("[T]he question is not the reasonableness of the federal court's interpretation [of the precedent at issue], but rather whether the [state] court's narrower reading of that opinion was 'objectively unreasonable.'") (citation omitted); *see also Carey v. Musladin*, 549 U.S. 70, 76-77 (2006) (concluding

that the fact that "lower courts have diverged widely" on the question presented "[r]eflect[s] the lack of guidance from this Court" and supports a finding that "the state court's decision was not contrary to or an unreasonable application of clearly established federal law").

Furthermore, assuming that *Lawrence* clearly established a fundamental right and/or a higher standard of review, we hold that neither the right nor standard is implicated in the present case. In this regard, we agree with the Seventh Circuit's decision in *Muth v. Frank*, 412 F.3d 808 (7th Cir.), *cert. denied*, 546 U.S. 988 (2005). There, the defendant was convicted of incest in a Wisconsin state court and argued that "Wisconsin's incest statute is unconstitutional insofar as it seeks to criminalize a sexual relationship between two consenting adults." *Id.* at 810. The defendant filed a petition for habeas corpus relief that the federal district court denied. On appeal, the Seventh Circuit affirmed, concluding that "[g]iven . . . the specific focus in *Lawrence* on homosexual sodomy, the absence from the Court's opinion of its own 'established method' for resolving a claim that a particular practice implicates a fundamental liberty interest, and the absence of strict scrutiny review," there was no clearly established federal law "that supports [the defendant's] claim that he has a fundamental right to engage in incest free from government proscription." *Id.* at 818.

A similar conclusion applies here. As the Seventh Circuit held, *Lawrence* did not address or clearly establish federal law regarding state incest statutes. Indeed, the *Lawrence* Court expressly distinguished statutes like Ohio Rev. Code § 2907.03(A)(5) when it emphasized that "[t]he present case does not involve . . . persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused[.]" *Lawrence*, 539 U.S. at 578. Unlike sexual relationships between unrelated same-sex adults, the stepparent-stepchild relationship is the kind of relationship in which a person might be injured or coerced or where consent might not easily be refused, regardless of age, because of the inherent influence of the stepparent over the stepchild.

Moreover, the State of Ohio's interest in criminalizing incest is far greater and much different than the interest of the State of Texas in prosecuting homosexual sodomy. Ohio's paramount concern is protecting the family from the destructive influence of intra-family, extra-marital sexual contact. This is an important state interest that the *Lawrence* Court did not invalidate. For these reasons, we hold that the Ohio Supreme Court's decision was not contrary to and did not involve an unreasonable application of clearly established federal law.

Lowe's remaining arguments are meritless. His claim that the Ohio law is contrary to *Lawrence* because it is morality-based fails for two reasons. First, the state has a legitimate and important interest in protecting families. *See Michael H. v. Gerald D.*, 491 U.S. 110, 123-24 (1989) ("Our decisions establish that the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition.") (citation and internal quotation marks omitted); *see*, *e.g.*, *Camp v. State*, 704 S.W.2d 617, 619 (Ark. 1986) ("[S]ociety is as concerned with the integrity of the family, including step and adoptive relationships as well as those of blood relationships, and sexual activity is equally disruptive, whatever the makeup of the family."). Second, the *Lawrence* Court did not categorically invalidate criminal laws that are based in part on morality. *Cf. Williams v. Morgan*, 478 F.3d 1316, 1323 (11th Cir. 2007) (concluding that "public morality survives as a rational basis for legislation even after *Lawrence*"). Finally, Lowe's assertion that Ohio's "generalized interest in protecting the family unit" cannot support the statute as applied in this case because "there is no evidence in the record that beyond [his] technical status as stepfather an actual family unit even existed" is also without merit. Ohio has an interest in protecting *all* families against destructive sexual contacts irrespective of the particular factual family dynamic.

## IV.

For these reasons, we affirm the judgment of the district court.