# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30679

United States Court of Appeals
Fifth Circuit

**FILED**

May 23, 2017

Lyle W. Cayce
Clerk

BRANDON COKER; MICHAEL GOLDEN,

Plaintiffs - Appellants

v.

JULIAN WHITTINGTON; CHARLES OWENS,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Louisiana

Before JONES and OWEN, Circuit Judges, and ENGELHARDT, District Judge.[*]

EDITH H. JONES, Circuit Judge:

The appellants are two former sheriff's deputies in Bossier Parish, Louisiana, who chose not to obey a directive from the Sheriff and were removed from their offices. Their disobedience arose from their decisions to move in with each other's wife and family before getting divorced from their current wives. Whether these decisions, which violated the Sheriff's Code of Conduct, infringed on appellants' constitutional rights, and whether the Code's policies conform to the Constitution were decided against them. We AFFIRM.

---

[*] Chief District Judge of the Eastern District of Louisiana, sitting by designation.

No. 16-30679

The material facts are undisputed.[1]  When Chief Deputy Sheriff Owens learned in late October 2014 that Coker and Golden had each taken up residence in the other's house, exchanging spouses without having divorced their current wives, they were placed on administrative leave for violating the Sheriff's Code of Conduct.  The Code includes the following standards:

> Conduct yourselves at all times in such a manner as to reflect the high standards of the Bossier Sheriff's Office . . . [and]
> Do not engage in any illegal, immoral, or indecent conduct, nor engage in any *legitimate* act which, when performed in view of the public, would reflect unfavorabl[y] upon the Bossier Sheriff's Office.

They had also violated a provision that required them to inform their direct supervisors within 24 hours of a change of address, a measure designed to ensure their availability at all times in case of an emergency.

Matters moved swiftly.  Coker and Golden were informed that each must cease living with a woman not his spouse.  If the deputies refused to do so, they were told, then as of November 24 they would be considered to have terminated employment voluntarily.  The deadline passed, their living situations did not change, and they filed suit shortly thereafter.

Defendants in the lawsuit were Sheriff Whittington and Deputy Sheriff Owens, in their personal and official capacities, and the Bossier Parish Sheriff's Office.  Following evidentiary jousting, the district court ruled in favor

---

[1] The alleged fact dispute does not exist, nor would it be material if it did. While Coker and Golden maintain they were ordered to "cease all contact" with the other man's spouse in a meeting with Owens, the district court found that counsel for the sheriff's department subsequently made clear in two letters that not "having contact with each other" was not a condition for employment, and that the sole condition necessary for Coker and Golden to return to work was to cease cohabitation with a married woman not his wife. *See Scott v. Harris,* 550 U.S. 372, 380 (2007). Regardless whether "no contact" was a condition, there is no dispute Coker and Golden failed to meet the condition of changing their living arrangements.

of the defendants.  The court held first that the Code policies invoked against Coker and Golden are supported by the rational grounds of preserving a cohesive police force and upholding the public trust and reputation of the Sheriff's Department.  Case law, including decisions of this circuit, has uniformly approved terminations of law enforcement officers for sexually inappropriate conduct.[2]  There are no decisions to the contrary suggesting that the deputies, as public employees of law enforcement agencies, have constitutional rights to "associate" with each other's spouses before formal divorce.  That *Lawrence v. Texas*, 539 U.S. 558, 123 S. Ct. 2472 (2003), expanded substantive constitutional rights relating to personal sexual choices does not mandate a change in policies relevant to public employment, where it was more recently reaffirmed that public employees necessarily shed some of their constitutional rights as a legitimate exchange for the privilege of their positions.  *Garcetti v. Ceballos*, 547 U.S. 410, 426, 126 S. Ct. 1951, 1962 (2006).  The district court also concluded that the Code of Conduct is not unconstitutionally vague as written or enforced.  It does not offend the fair

---

[2] *See Shumpert v. City of Fulton*, 77 F.3d 474 (5th Cir. 1995) (when relationships outside of marriage occur "between government employees, any right to such relations that might normally exist may be properly tempered by a state's heightened interest in regulating the conduct of its employees."); *Shawgo v. Spradlin,* 701 F.2d 470, 483 (5th Cir. 1983) ("we can ascertain a rational connection between the exigencies of Department discipline and forbidding members of a quasi-military unit, especially those different in rank, to share an apartment or to cohabit"); *Mercure v. Van Buren Twp.*, 81 F. Supp. 2d 814, 827 (E.D. Mich. 2000) (holding that discharge of a police officer for the "choice to enter into a relationship with the wife of his superior officer on the force" was rational*). See also Hughes v. City of N. Olmsted*, 93 F.3d 238, 242 (6th Cir. 1996) (police department investigation of an officer "because of claims that he had committed acts of sexual misconduct while on duty, an accusation which certainly related to whether [the officer] was conducting himself appropriately as a police officer," was not unreasonable); *Fugate v. Phoenix Civil Serv. Bd.*, 791 F.2d 736, 741 (9th Cir. 1986) (holding that the right of privacy does not extend "to sexual behavior that is not purely private, that compromises a police officer's performance, and that threatens to undermine a police department's internal morale and community reputation"); *Seegmiller v. LaVerkin City*, 528 F.3d 762, 772 (10th Cir. 2008) (holding that "governmental actions restricting police officers' sexual conduct" of an extramarital affair were reasonable).

notice requirements of due process, especially with regard to discipline that was not itself unconstitutional. *Shawgo*, 701 F.2d at 477–79.

We find no reversible error of fact or law in the district court's decision. Sexual decisions between consenting adults take on a different color when the adults are law enforcement officers. Their enforcement duties include, for instance, crimes of human trafficking and spousal abuse that place them in sensitive positions with members of the public. Their involvement in relations that openly and "notoriously" violate the legally sanctioned relationships of marriage and family is likely to besmirch the reputation of the Sheriff's Department and hinder its ability to maintain public credibility. Moreover, these officers' extramarital relationships, even if consensual and loving at the outset, have great potential to create internal dissension within the force. Finally, it is not hard to envision how the existence of Coker's and Golden's cohabitation with each other's wives prior to divorce and remarriage might be adversely used in litigation concerning the deputies' official conduct.

The Supreme Court's recent decision in *Obergefell v. Hodges* does not alter applicable law. 135 S. Ct. 2584, 2598 (2015). Whatever ramifications *Obergefell* may have for sexual relations beyond the approval of same-sex marriage are unstated at best, but *Obergefell* is expressly premised on the unique and special bond created by the formal marital relationship and children of that relationship. *Id.* at 2594–95. *Obergefell* does not create "rights" based on relationships that mock marriage, and no court has so held.[3]

The district court's judgment is **AFFIRMED**.

---

[3] Of course, even if such rights existed and were violated by the Sheriff and Chief Deputy, they would have qualified immunity in their individual capacities because no "clearly established law" prevented warning Coker and Golden that the consequences of their personal relationships would be dismissal from the force. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080 (2011).