**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JANELLE PEREZ,
              *Plaintiff-Appellant*,

v.

CITY OF ROSEVILLE; ROSEVILLE
POLICE DEPARTMENT; STEPHAN
MOORE, Captain; DANIEL HAHN,
Chief; CAL WALSTAD, Lieutenant,
              *Defendants-Appellees.*

No. 15-16430

D.C. No.
2:13-cv-02150-
GEB-DAD

OPINION

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, Jr., Senior District Judge, Presiding

Argued and Submitted April 19, 2017
San Francisco, California

Filed February 9, 2018

Before: Stephen Reinhardt and A. Wallace Tashima,
Circuit Judges, and Donald W. Molloy,[*] District Judge.

Opinion by Judge Reinhardt;
Concurrence by Judge Tashima

---

[*] The Honorable Donald W. Molloy, United States District Judge
for the District of Montana, sitting by designation.

# SUMMARY[**]

---

## Employment Discrimination / Constitutional Law

The panel (1) reversed the district court's summary judgment in favor of the defendants on a former probationary police officer's claim of violation of her rights to privacy and intimate association and (2) affirmed the district court's summary judgment on the former officer's due process and gender discrimination claims.

The officer was discharged after an internal affairs investigation into her romantic relationship with a fellow officer. She claimed, pursuant to 42 U.S.C. § 1983, that her termination violated her constitutional rights to privacy and intimate association because it was impermissibly based in part on disapproval of her private, off-duty sexual conduct. Disagreeing with the Fifth and Tenth Circuits, the panel held that the constitutional guarantees of privacy and free association prohibit the State from taking adverse employment action on the basis of private sexual conduct unless it demonstrates that such conduct negatively affects on-the-job performance or violates a constitutionally permissible, narrowly tailored regulation. Because a genuine factual dispute existed as to whether the defendants terminated the officer at least in part on the basis of her extramarital affair, the panel concluded that she put forth sufficient evidence to survive summary judgment. Moreover, the rights of privacy and intimate association were clearly established such that any reasonable official would have been on notice that, viewing the facts in the light

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

most favorable to her, the officer's termination was unconstitutional. The panel therefore reversed the district court's grant of qualified immunity on the privacy claim and remanded that claim for further proceedings.

The panel affirmed the district court's summary judgment on the officer's due process claim because any due process rights she might have had were not clearly established at the time of the challenged action. Therefore, the defendants were entitled to qualified immunity on that claim.

The panel affirmed the district court's summary judgment on the officer's sex discrimination claim because the evidence, taken in the light most favorable to her, indicated that the defendants' disapproval of her extramarital affair, rather than gender discrimination, was the cause of her termination.

Concurring, Judge Tashima disagreed with much of the majority's reasoning but agreed with its decision to reverse the district court's grant of summary judgment to the defendants on the officer's Fourteenth Amendment privacy claim. Judge Tashima concurred on the basis that the defendants' reasons for firing the officer all arose in such short order after the internal affairs review that a reasonable inference could be drawn that they may have been pretextual. He disagreed with the majority's analysis of the significance of the deposition testimony of the police chief and the statements of subordinate officers.

**COUNSEL**

Richard P. Fisher (argued), Goyette & Associates Inc., Gold River, California, for Plaintiff-Appellant.

Stacey N. Sheston (argued) and Laura J. Fowler, Best Best & Krieger LLP, Sacramento, California, for Defendants-Appellees.

**OPINION**

REINHARDT, Circuit Judge:

We are confronted in this case with the ongoing and difficult constitutional question of how much control the government can force individuals to cede over their private lives in exchange for the privilege of serving the public by means of government employment. To be sure, private citizens often must sacrifice some individual freedom as a condition of their employment by the State, but "a citizen who works for the government is nonetheless a citizen." *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006). As a society, we must remain solicitous of the constitutional liberties of public employees, as of any citizens, to the greatest degree possible, and should be careful not to allow the State to use its authority as an employer to encroach excessively or unnecessarily upon the areas of private life, such as family relationships, procreation, and sexual conduct, where an individual's dignitary interest in autonomy is at its apex. Nor can or should we seek to eliminate the development of ordinary human emotions from the workplace where we spend a good part of our waking hours, unless such development is incompatible with the proper performance of one's official duties. *See Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1174 (9th Cir. 2003).

Janelle Perez, a former probationary police officer employed by the Roseville Police Department ("the Department"), appeals the district court's summary judgment in favor of Chief Daniel Hahn, Captain Stefan Moore, and Lieutenant Cal Walstad on her claims against them under 42 U.S.C. § 1983 for (1) violation of her rights to privacy and intimate association under the First, Fourth, and Fourteenth Amendments; and (2) deprivation of liberty without due process of law in violation of the Fourteenth Amendment. With respect to the privacy claim, the district court based its decision on qualified immunity. As to the liberty claim, it found no violation of the Constitution. Perez also appeals the district court's summary judgment on her claims against the individual defendants, the City of Roseville, and the Department for sex discrimination in violation of Title VII of the Civil Rights Act of 1964 and the California Fair Employment and Housing Act ("FEHA").

Perez was discharged after an internal affairs investigation into her romantic relationship with a fellow police officer. She claims that her termination violated her constitutional rights to privacy and intimate association because it was impermissibly based in part on disapproval of her private, off-duty sexual conduct. We have long held that the constitutional guarantees of privacy and free association prohibit the State from taking adverse employment action on the basis of private sexual conduct unless it demonstrates that such conduct negatively affects on-the-job performance or violates a constitutionally permissible, narrowly tailored regulation. *See Thorne v. City of El Segundo*, 726 F.2d 459, 471 (9th Cir. 1983). Because a genuine factual dispute exists as to whether the defendants terminated Perez at least in part on the basis of her extramarital affair, we conclude that she has put forth sufficient evidence to survive summary judgment on her Section 1983 claim for violation of her

constitutional rights to privacy and intimate association. Moreover, these rights were clearly established by our precedent in *Thorne* such that any reasonable official would have been on notice that, viewing the facts in the light most favorable to her, Perez's termination was unconstitutional. Accordingly, we reverse the district court's grant of qualified immunity on her privacy claim and remand that claim for further proceedings. We affirm summary judgment on Perez's due process claim because any due process rights she might have had were not clearly established at the time of the challenged action. Therefore, the defendants are entitled to qualified immunity on that claim.

Finally, we affirm summary judgment on Perez's sex discrimination claim because the evidence, taken in the light most favorable to her, indicates that the defendants' disapproval of her extramarital affair, rather than gender discrimination, was the cause of her termination.

## I.   Factual and Procedural Background

On January 4, 2012, Janelle Perez was hired by Chief Daniel Hahn to serve as a police officer in the Roseville Police Department. A few months into her probationary term, Perez and a fellow officer, Officer Shad Begley ("Begley") began a romantic relationship. Begley had been with the Department for over seven years.  Both Perez and Begley were separated from, although still married to, other individuals.

On June 6, 2012, Begley's wife Leah filed a citizen complaint in which she alleged that Perez and her husband were having an affair and that they were engaging in inappropriate sexual conduct while on duty. This letter prompted the Department to initiate an Internal Affairs

("IA") investigation headed by Lieutenant Bergstrom.[1] In his report, Bergstrom stated that there was no evidence of on-duty sexual contact between Perez and Begley, but that the two "made a number of calls and texts when one or both was on duty," which "potentially" violated Department policy.

At the conclusion of his investigation, Bergstrom provided his written IA report to Captain Stefan Moore. Moore then assigned the review of the report to Lieutenant Cal Walstad, who recommended in a July 10, 2012 memorandum that the Department find Perez and Begley's conduct violated Department policies 340.3.5(c) ("Unsatisfactory Work Performance") and 340.3.5(aa) ("Conduct Unbecoming"). Moore agreed with Walstad's findings, and believed that Perez should be released from her probation in light of the results of the investigation. Moore later made comments that raise a genuine factual issue as to whether his recommendation that Perez be discharged was based on moral disapproval of her extramarital affair. Similarly, Walstad, who was also heavily involved in the disciplinary process, later admitted that he morally disapproved of Perez's extramarital sexual conduct.

Perez and Begley received official memoranda dated August 15, which sustained the charges of "Unsatisfactory Work Performance" and "Conduct Unbecoming." The Department also issued a letter to Begley's estranged wife on August 16, 2012, informing her of the same. Finally,

---

[1] "Internal Affairs" here refers not to sexual affairs that occur between officers within the department, but to the unit that investigates professional misconduct.

Moore issued written reprimands to Perez and Begley on the basis of the charges.

At some point after the completion of the IA report, Lieutenant Maria Richardson informed Chief Hahn that Perez was not getting along with other female officers. Captain Moore also received similar information from Lieutenant Richardson, as well as from Sergeant Missy Morris. According to Perez, however, she made efforts to get along with both Richardson and Morris, and had no contact with any of the four other female officers in the Department.

On August 29, 2012, shortly after receiving the reprimands from the Department, Perez fell ill, and Begley covered her shift at her request. The next day, Begley approached Sergeant Newton, the supervisor in charge of the dayshift schedule, about covering for Perez again. Newton asked him when Perez would be covering for Begley in return for the August 29 shift trade. Begley responded that he did not know and would contact Perez. Shortly after, Perez called Newton to discuss the shift trade policy. Newton and Perez had multiple follow-up conversations regarding the policy, and at some point Perez expressed her belief that the shift trade policy was being applied unfairly. Newton later discussed the incident with Hahn, Moore, and Lieutenant Glynn, reporting that Perez seemed "angry" and "agitated." At their request, Newton memorialized his conversation with Perez.

On August 13, a citizen filed a complaint with Lieutenant Bergstrom about Perez's conduct, alleging that she was rude and insensitive during a domestic violence call. Bergstrom informed Hahn of the complaint, but because the citizen apparently did not wish to pursue the matter further, no IA investigation was initiated.

Perez appealed her reprimand arising out of the initial IA investigation into her affair. An administrative hearing before Chief Hahn was held on September 4, 2012, at which time Perez provided Hahn with her written rebuttal to the IA findings of "Unsatisfactory Work Performance" and "Conduct Unbecoming." At the conclusion of that hearing, Perez was informed without any explanation that she was being released from probation (i.e., "you're fired."); she was issued a written notice, dated September 4, 2012, which was prepared in advance of the hearing. The notice contained no reasons for her discharge. After the hearing, when Perez asked Hahn why she was being terminated, the Chief declined to give a reason.

About two weeks after Perez's termination, Lieutenant Glynn issued a new written reprimand to Perez from Captain Moore, dated September 10, 2012, which reversed the findings regarding sections 340.3.5(c) ("Unsatisfactory Work Performance") and 340.3.5(aa) ("Conduct Unbecoming"), but based the reprimand on new charges of violating section 702 ("Use of Personal Communication Devices"). Chief Hahn later averred that Perez's "personal calls during work time and during performance of various work duties was a concern, but not one warranting termination." Perez did not appeal this reprimand because she had already been terminated from her position, and her termination letter said that she had no right to appeal. In his deposition testimony, Chief Hahn stated (apparently for the first time) that he made the decision to terminate Perez's employment prior to the meeting, based on additional information that he had learned about Perez's performance and conduct since the completion of the initial IA investigation.

On January 10, 2014, Perez sued the City of Roseville, the Department, Moore, Hahn, and Walstad, alleging Section 1983 claims for violation of her rights to privacy and freedom of association and her right to due process, as well as sex discrimination under Title VII and state law.[2]

The district court granted summary judgment to each defendant. On Perez's Section 1983 claim for violation of her rights to privacy and intimate association, the district court concluded that the defendants were entitled to qualified immunity because Perez did not have a clearly established constitutional right to engage in a personal relationship with Begley while on duty. On her due process claim, the district court determined that there was no evidence that stigmatizing information about Perez was published in connection with her termination, and therefore no violation of her rights. As to Perez's sex discrimination claim, the court found that she did not provide sufficient evidence that Hahn's stated reasons for terminating her probationary employment were a pretext for sex discrimination or that her gender was a motivating factor in the decision making process. Perez timely appealed.

## II. Standard of Review

We review a district court's order granting summary judgment *de novo*, and may affirm on any ground supported by the record. *Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089, 1096–97 (9th Cir. 2003). At the summary judgment stage, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most

---

[2] Perez's complaint also alleged termination in violation of public policy and violation of her rights under the Peace Officer's Procedural Bill of Rights Act, but she does not press those claims on appeal.

favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

## III.    Analysis

## A. Section 1983 claim for violation of rights to privacy and intimate association

"To prevail under 42 U.S.C. § 1983, a plaintiff must prove that [s]he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Marsh v. Cty. of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012) (citation omitted). She "must also show that [her] federal right was 'clearly established' at the time of the violation, otherwise [the] government officials are entitled to qualified immunity." *Id.* (citation omitted).

It is undisputed that all three individual defendants were acting under color of state law. Therefore, to survive summary judgment, Perez must establish (1) that a genuine factual dispute exists as to whether her constitutional rights were violated; and (2) that those constitutional rights were clearly established.

## 1.  Constitutional Violation

Perez contends that the defendants violated her constitutional rights to privacy and intimate association[3]

_____

[3] "[T]he freedom of association takes two forms": (1) the freedom "to enter into and maintain certain intimate human relationships "; and (2) the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Fleisher v. City of*

when they terminated her employment based at least in part on her extramarital affair with Begley. We have long recognized that officers and employees of a police department enjoy a "right of privacy in 'private, off-duty' sexual behavior." *See Thorne*, 726 F.2d at 468, 471; *Fugate v. Phx. Civil Serv. Bd.*, 791 F.2d 736, 741 (9th Cir. 1986). This right protects public employees from adverse employment action based "*in part*" on their private sexual activities. *See Thorne*, 726 F.2d at 468. In other words, under our precedent, the Constitution is violated when a public employee is terminated (a) at least in part on the basis of (b) protected conduct, such as her private, off-duty sexual activity.[4] We conclude that Perez has provided sufficient evidence of each element to survive summary judgment.

### a.  Causal Nexus

The defendants argued before the district court that Perez could not establish that any action was taken against her *because of* her sexual relationship with Begley. To the contrary, we conclude that there remains a genuine factual

---

*Signal Hill*, 829 F.2d 1491, 1499 (9th Cir. 1987). The present case implicates only the first form of freedom of association, which is "coextensive with the right of privacy." *Id.* at 1500.

[4] In addition to her claim that her termination was unconstitutional, Perez also argues that the IA investigation itself unconstitutionally infringed on her right to privacy. We conclude that the IA investigation did not itself violate the Constitution. The investigation was prompted by the complaint of Leah Begley, which alleged that her husband and Perez were having an extramarital affair and engaging in sexual conduct *on-duty.*   That was a constitutionally legitimate reason for the Department to undertake an investigation.

dispute about whether Hahn terminated her "in part" because of the affair.

First, Chief Hahn's testimony is inconsistent as to whether the IA investigation into Perez's affair played a role in his decision to terminate her employment. For example, when asked whether "the whole Leah Begley complaint, internal affairs investigation, all of that, didn't have anything to do with your decision to terminate Miss Perez," Hahn responded, "No. I would say it was part of it." This admission contradicts Hahn's statement in his declaration that "Perez' [sic] private, off-duty relationship with Begley was not a factor in [his] decision to release her from probation."[5] A reasonable factfinder could conclude on the basis of Hahn's testimony alone that Perez's termination was motivated *in part* by the revelation of her extramarital affair with Begley. *See Gulden v. Crown Zellerbach Corp.*, 890 F.2d 195, 197 (9th Cir. 1989) ("Summary judgment is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." (citation omitted)).

Second, the record indicates that Captain Moore was also motivated *in part* to terminate Perez on the basis of her extramarital affair, and although he was not the ultimate decisionmaker, he was intimately involved in the

---

[5] Later in his testimony, Hahn again admitted that he considered the IA investigation into Perez's affair in deciding to terminate her:

> Q: "[T]his whole investigation that started with Leah Begley was one of the red flags, one of the factors you took into account to terminate Miss Perez, right?
>
> A: "Yes."

decisionmaking process resulting in Perez's termination. *Cf. Poland v. Certoff*, 494 F.3d 1174, 1182 (9th Cir. 2007) ("[A] subordinate's bias is imputed to the employer if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process."). For example, Moore testified that the fact that Perez and Begley were conducting an extramarital affair was "significant" to him, because it "presente[d] a truly ethical dilemma whether or not that is something that could reflect unfavorably on the police department." Consequently, not only did Moore issue Perez a memorandum sustaining the "Conduct Unbecoming" and "Unsatisfactory Work Performance" charges and a written reprimand based on the IA investigation, but he also recommended to Chief Hahn that Perez be terminated on the basis of those disciplinary actions. A reasonable factfinder could conclude that Moore was motivated *in part* to recommend terminating Perez on the basis of her extramarital affair, and that he was sufficiently involved in Perez's termination that his motivation affected the decisionmaking process. The conclusion that the Department morally disapproved of Perez's private sexual conduct is further supported by the views of Walstad, who was also engaged in the termination process and stated that he personally felt that her conduct was inappropriate in light of her marital status.

Third, there is sufficient circumstantial evidence to raise a genuine factual dispute about whether the Department's three proffered reasons for terminating Perez were pretextual attempts to conceal its true motive for terminating her: the extramarital affair with Begley. The defendants claim that Perez was terminated for three reasons unrelated to her sexual conduct: (1) she did not get along well with other

female officers; (2); the Department received a complaint from a domestic violence victim about Perez's conduct during a service call; and (3) she displayed a "bad attitude" in an interaction with a superior about a potential shift trade. Based on the evidence that Walstad and Moore morally disapproved of Perez's sexual conduct, and the speed with which these unrelated employment issues were "discovered" immediately after the IA investigation revealed Perez's affair, a reasonable factfinder could conclude that all three reasons were pretexts for an impermissible motive. *Cf. Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1069 (9th Cir. 2003), *as amended* (Jan. 6, 2004) ("Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases.").

Prior to Leah Begley's June 6, 2012 letter informing the Department of the extramarital affair, Perez had been employed for approximately six months and received positive performance evaluations. From June 14 to June 21, Lieutenant Bergstrom conducted an IA investigation into Leah Begley's allegations about Perez's sexual conduct. Based on Lieutenant Bergstrom's investigation, Lieutenant Walstad recommended sustaining charges of "Conduct Unbecoming" and "Unsatisfactory Work Performance" against Perez and Begley in a memorandum, which specifically referenced the fact that "[b]oth officers are married and have young children."  The memorandum criticized Perez's relationship with Begley as "unprofessional," and noted that it "reflect[ed] unfavorably upon the Roseville Police Department and its members" because it was "secret."  Notably, Walstad later testified to his "personal feelings" that the affair was "inappropriate" because of Perez's and Begley's marital and familial status. The charges were then sustained in Captain Moore's August

15 memorandum,[6] and Moore issued a written reprimand based on these charges to Perez on August 23. Moore also recommended to Chief Hahn that Perez be terminated on the basis of the charges. On September 4, a hearing was held before Hahn on Perez's appeal from the reprimand. Perez was terminated at the close of this hearing, and Chief Hahn declined to provide a reason.

Meanwhile, all three of the Department's now-proffered reasons—all unrelated to on- or off-duty sexual conduct— arose *after* the conclusion of the IA investigation, over the course of approximately eight weeks. Based in part on this temporal proximity, a reasonable jury could infer that these three reasons were a pretext for Perez's termination. *Cf. Yartzoff v. Thomas*, 809 F.2d 1371, 1376–77 (9th Cir. 1987) (finding that, after years of positive reviews, plaintiff receiving his first sub-average performance rating only three months after filing an administrative complaint against employer was probative of pretext in retaliation case).

Furthermore, there is circumstantial evidence that each of the Department's proffered reasons is independently "unworthy of credence." *Cf. Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000) (Title VII plaintiff "can prove pretext . . . indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable"). First, regarding Perez's alleged inability to get along with her female coworkers, Perez testified that she never worked with any female officers besides Sergeant

---

[6] Perez maintains that she did not receive this memorandum until she met with Moore in person on August 23.

Morris and Lieutenant Richardson. Also, this complaint was made only after her affair became known.

Neither of the other two justifications upon which the Department now claims to have relied is more credible. In contrast to the allegations regarding Perez's sexual conduct, which were investigated thoroughly, it is undisputed that "no fact-finding investigation" was conducted into the supposed domestic violence victim's citizen complaint against Perez. Similarly, rather than investigating the circumstances surrounding Perez's alleged "bad attitude" with her supervisor, Sergeant Newton, regarding a shift trade, Chief Hahn simply directed Newton to immediately memorialize his conversation with Perez. Newton testified that he found this course of action "weird," and "that 'something' was going on." *Cf. Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1117 (9th Cir. 2011) ("A plaintiff may . . . raise a triable issue of pretext through evidence that an employer[] . . . deviated from its normal internal disciplinary procedure.").

Our conclusion that a triable issue of fact exists as to whether the Department's proffered justifications for Perez's firing were pretextual is reinforced by the frequency with which the Department shifted its reasons for firing her after learning of her affair. When Chief Hahn notified Perez of her termination at the conclusion of her IA appeal on September 4, he initially declined to provide any reason at all. Then, on September 20, well after her termination, Perez received a new reprimand from Captain Moore, dated September 10, reversing the findings of "Conduct Unbecoming" and "Unsatisfactory Work Performance" and substituting a new violation under section 702 ("Use of Personal Communication Devices"). Moreover, despite his testimony that he decided to fire her on August 30, it was not

until this litigation commenced that Chief Hahn put forth the three reasons—failure to get along with women officers, citizen's complaint, and bad attitude with supervisor—on which the Department now relies for terminating her and all of which differ from both the original and the belated reprimands issued by the Department after she was fired.

In sum, given the investigation of charges based upon allegations related to her affair with another officer, the evidence of the investigators' moral disapproval of her affair, and the Department's constantly shifting justifications for her termination, as well as the independent reasons for doubting the legitimacy of each shifting justification, we conclude that a genuine issue of material fact exists as to whether Perez was fired at least in part because of her extramarital affair.

### b.  Constitutionally Protected Conduct

Taking the facts in the light most favorable to Perez and drawing all inferences in her favor, she was terminated at least in part for having an extramarital affair with Begley. Her extramarital sexual conduct was protected by her rights to privacy and intimate association. Therefore, her termination violated her "constitutional interests and cannot be upheld under any level of scrutiny." *Thorne*, 726 F.2d at 471.

*Thorne* is the seminal case in which we first recognized that police officers enjoy a "right of privacy in 'private, off-duty' sexual behavior." *See Fugate*, 791 F.2d at 741(discussing *Thorne*). In *Thorne*, a former clerk-typist in the City of El Segundo police department applied and was rejected for employment as a police officer in that same department. In evaluating her claim, we articulated the constitutional principles that cabin the circumstances in

which the State may rely on private sexual conduct in taking adverse employment action against an employee:

> In the absence of any showing that private, off-duty, personal activities of the type protected by the constitutional guarantees of privacy and free association have an impact upon an applicant's on-the-job performance, and of specific policies with narrow implementing regulations, we hold that reliance on these private non-job-related considerations by the state in rejecting an applicant for employment violates the applicant's protected constitutional interests and cannot be upheld under any level of scrutiny.

*Thorne*, 726 F.2d at 471. Thus, we concluded that the police department violated Thorne's rights to privacy and free association by relying on her private, non-job-related sexual conduct as a clerk-typist in refusing to hire her as an officer, without "any showing that [her] private, off-duty personal activities . . . [had] an impact upon [her] on-the-job performance," or contravened "specific policies with narrow implementing regulations." *Id.*

The present case is controlled by *Thorne*. As in that case, the defendants here failed to introduce sufficient evidence that Perez's affair had any meaningful impact upon her job performance. To the contrary, as Lieutenant Bergstrom concluded in his report, "there is no evidence that any inappropriate behavior occurred while the officers were on duty," and it is undisputed that Perez's productivity was

"average to above-average."**[7]** Nor is there any contention that Perez's sexual conduct violated any narrowly drawn, constitutionally permissible regulation.**[8]**

Given the absence of any material evidence that Perez's affair had a meaningful effect upon her on-the-job performance, or resulted in a violation of a narrowly tailored department regulation, and taking the evidence in the light

---

**[7]** Bergstrom's investigation revealed two days during which the officers' phone records appeared "abnormal," and these phone records formed the basis of Perez's second, post-termination, written reprimand. Although Perez's written reprimand was ultimately changed to reflect a violation of Section 702.2.2 ("Use of Personal Communication Devices"), Chief Hahn testified that her phone conversations with Begley alone were not sufficient to warrant termination. Moreover, Bergstrom's IA investigation concluded that there was no evidence that the officers were "excessively texting each other during their shifts." At no point did any investigators find evidence of on-duty sexual activity between Perez and Begley, and the use of the phone was dismissed as a basis, let alone *the* basis, for her firing. A rational jury could conclude that the use of communication devices had at most a *de minimis* impact on Perez's performance.

**[8]** To the extent that Walstad and Moore based their investigative findings and written reprimand in part on their "personal views" of marriage and family, or were "appl[ying] the moral standards of the general society, as they saw them," they acted in violation of the Constitution. "The very purpose of constitutional protection of individual liberties is to prevent such majoritarian or capricious coercion." *Thorne*, 726 F.2d at 470. The fact that both officers were "married and have young children" could not be said to have rendered them unworthy of "the trust and respect of those who are served" by the Department. *See Lawrence v. Texas*, 539 U.S. 558, 572 (2003) ("[L]iberty gives substantial protection to adult persons in deciding how to conduct their private lives in matters pertaining to sex."); *id.* at 577 ("[T]he fact that the governing majority in a State has traditionally viewed a particular practice as immoral is not a sufficient reason for upholding a law prohibiting the practice.") (quoting *Bowers v. Hardwick*, 478 U.S. 186, 216 (1986) (Stevens, J., dissenting)).

most favorable to her, the defendants violated Perez's constitutional rights by terminating her in part on the basis of her extramarital affair.

We recognize that, since *Thorne*, at least two other circuits have adopted rules that appear to be in some tension with our case. *See Coker v. Whittington*, 858 F.3d 304, 306 (5th Cir. 2017) (concluding Constitution not violated where two sheriff's deputies were fired for moving in with each other's wives before finalizing divorce from their current wives because the Sheriff's policies were supported by a rational basis); *Seegmiller v. LaVerkin City*, 528 F.3d 762, 770 (10th Cir. 2008) (upholding termination of officer on basis of extramarital affair under rational basis test because there is no "fundamental liberty interest 'to engage in a private act of consensual sex'").

We reject the approach taken by the Fifth and Tenth Circuits for the following reasons. First, our binding precedent in *Thorne* compels us to do so. Because the State's actions in this case "intrude on the core of a person's constitutionally protected privacy and associational interests," we must analyze them under "heightened scrutiny." *Thorne,* 726 F.2d at 470. Moreover, even if we were to agree that the Department's action here need only satisfy rational basis review, *Thorne* explains that it cannot survive any level of scrutiny without either a showing of a negative impact on job performance or violation of a constitutionally permissible, narrowly drawn regulation. *Id.* at 471. Under our precedent, the Department must do more than cite a broad, standardless rule against "conduct unbecoming an officer." *Cf. Seegmiller*, 528 F.3d at 772 ("[L]aw enforcement code of ethics requires officers to keep [their] private life unsullied as an example to all and [to] behave in a manner that does not bring discredit to [the

officer] or [the] agency."(citations and quotation marks omitted) (alteration in original)); *Coker*, 858 F.3d at 305 ("Conduct yourselves at all times in such a manner as to reflect the high standards of the Bossier Sheriff's Office . . . [and] Do not engage in any illegal, immoral, or indecent conduct, nor engage in any *legitimate* act which, when performed in view of the public, would reflect unfavorabl[y] upon the Bossier Sheriff's Office." (alteration in original)).

Second, the Fifth and Tenth Circuits fail to appreciate the impact of *Lawrence v. Texas*, 539 U.S. 558 (2003), on the jurisprudence of the constitutional right to sexual autonomy. *Coker*, 858 F.3d at 306; *Seegmiller*, 528 F.3d at 771. *Lawrence* did much more than merely conclude that Texas' anti-sodomy law failed the rational basis test. Instead, it recognized that intimate sexual conduct represents an aspect of the substantive liberty protected by the Due Process Clause. *See* 539 U.S. at 564. As such, the constitutional infirmity in Texas' law stemmed from neither its mere irrationality nor its burdening of a fundamental right to engage in homosexual conduct (or even private consensual sexual conduct, *cf. Seegmiller*, 528 F.3d at 771). Rather, Texas' law ran afoul of the Constitution's protection of substantive liberty by imposing a special stigma of moral disapproval on intimate same-sex relationships in particular. As the Court explained, the liberty protected by the Due Process Clause must extend *equally* to *all* intimate sexual conduct between consenting adults, regardless of whether they are of the same sex or not, married or unmarried. *See id.* at 578 ("[I]ndividual decisions by married persons, concerning the intimacies of their physical relationship, even when not intended to produce offspring, are a form of 'liberty' protected by the Due Process Clause . . . [T]his protection extends to intimate choices by unmarried as well as married persons." (citation omitted)); *see generally*

Laurence H. Tribe, Lawrence v. Texas: *The "Fundamental Right" That Dare Not Speak Its Name*, 117 Harv. L. Rev. 1893, 1903-05 (2004).

*Lawrence* makes clear that the State may not stigmatize private sexual conduct simply because the majority has "traditionally viewed a particular practice," such as extramarital sex, "as immoral." *Id.* Thus, without a showing of adverse job impact or violation of a narrow, constitutionally valid departmental rule, the Constitution forbids the Department from expressing its moral disapproval of Perez's extramarital affair by terminating her employment on that basis.

## 2. Clearly Established Law

Although Perez's termination violated her constitutional rights to privacy and intimate association, the defendants are entitled to qualified immunity unless those rights were clearly established at the time of the violation. Although we "do[] not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citation and quotation marks omitted). We reaffirm that, for purposes of qualified immunity, a Ninth Circuit precedent is sufficient to clearly establish the law within our circuit. *See, e.g.*, *Hughes v. Kisela*, No. 14-15059, ____F.3d ____, 2016 WL 9226211, at *18 (9th Cir. Nov. 28, 2016), as amended (June 27, 2017) (relying on the "most analogous Ninth Circuit case" in concluding that constitutional right in question was clearly established).[9] This rule is in no respect affected by *White*,

---

[9] We note that a controlling Ninth Circuit precedent is sufficient, but not necessary, to demonstrate that the law in question was clearly

which dealt only with the clarity, rather than the source, of established law for qualified immunity purposes.

The district court concluded that the defendants were entitled to qualified immunity because Leah Begley's complaint alleged that Perez and Begley engaged in on-duty sexual conduct. This is true only with respect to the investigation conducted by the IA. There were, however, two parts to Perez's allegations and two parts to *Thorne*. Because the district court both conflated the applicable law regarding investigations and terminations and misapplied *Thorne*'s clearly established rule regarding terminations to the facts of this case, we reverse its grant of qualified immunity to the defendants.

*Thorne* clearly established two ways in which a police department can violate the right of its officers to sexual privacy: (1) through "an unbounded, standardless inquiry" into matters "totally irrelevant to on-the-job sex," 726 F.2d at 469–70; and (2) by relying on "private non-job-related" sexual conduct without any evidence of "an impact upon . . . on-the-job performance" or in the absence of a constitutionally permissible, narrowly tailored regulation, *id.* at 471. In other words, a department can violate its employees' rights to privacy and intimate association either by impermissibly investigating their private sexual conduct or by taking adverse employment action on the basis of such private conduct.

---

established at the time of the challenged conduct: "In the absence of binding precedent, we look to whatever decisional law is available to ascertain whether the law is clearly established for qualified immunity purposes, including decisions of state courts, other circuits, and district courts." *Tekle v. United States*, 511 F.3d 839, 847 (9th Cir. 2007) (citation and alteration omitted).

The district court was correct insofar as it concluded that our "holding in *Thorne* does not show that the IA *investigation* into [Perez]'s relationship with Begley violated a clearly established constitutional right." *See* note 4, *supra*. This is so because Begley's wife's complaint alleged *on-the-job* sexual misconduct. The district court, however, conflated the constitutionality of the *investigation* into *on-duty* conduct with the constitutionality of Perez's *termination* on the basis of her *off-duty* extramarital affair. The district court's qualified immunity discussion did not consider Perez's termination. *Thorne* clearly established the unconstitutionality of *terminating* a police officer on the basis of "private, off-duty, personal" sexual conduct, unless a department can show that such conduct either adversely affected the officer's on-the-job performance or violated a constitutionally permissible, narrowly tailored department policy. 726 F.2d at 471.

Since *Thorne*, any reasonable police official in this circuit has had fair notice that the constitution protects police officers from termination based on wholly private sexual conduct which does not adversely affect their job performance or violate a narrowly tailored constitutional regulation.[10] *Thorne*'s rule is clear about the narrow circumstances under which a department's "reliance on . . . information obtained about [an employee's sex life]" in taking adverse employment action against her is

---

[10] We also note that *Thorne*'s rule clearly applies not only to adverse action taken against potential employees, but also the termination of police officers. We have twice applied *Thorne* in considering whether a police department violated officers' privacy rights by terminating them, although in each instance we concluded that under *Thorne* no violation had occurred. *See Fugate v. Phoenix Civil Serv. Bd.*, 791 F.2d 736, 741 (9th Cir. 1986); *Fleisher v. City of Signal Hill*, 829 F.2d 1491, 1500–01 (9th Cir. 1987).

constitutionally permissible: it may do so only based upon a demonstration of an adverse "impact upon . . . on-the-job performance," or of a violation of a specific, narrowly tailored constitutional regulation. *Thorne*, 726 F.2d at 471. Notably, in support of that holding, we approved of a district court decision that similarly found an officer's dismissal for cohabitation to constitute a violation of his constitutional rights to privacy and intimate association in the absence of a sufficient showing of adverse impact on job performance. *Id.* (citing *Briggs v. N. Muskegon Police Dep't*, 563 F. Supp. 585, 591 (W.D. Mich. 1983), *aff'd*, 746 F.2d 1475 (6th Cir. 1984) (holding that dismissal of police officer violated officer's constitutional rights in the absence of a showing that cohabitation negatively affected job performance)).

The district court erred as a matter of law by addressing only the constitutionality of the *investigation*, which was precipitated by a charge of sexual misconduct while on duty, and failing to consider whether the Department violated the Constitution by *terminating* Perez for conduct that was, for purposes of the summary judgment motion, off-duty. Although the district court was correct that the IA investigation was justified because Mrs. Begley's complaint alleged on-duty sexual conduct, it plainly erred when it failed to consider the termination question. As to that question, at the very least, a factual dispute remains as to whether under *Thorne* the Defendants violated Perez's clearly established constitutional rights to privacy and intimate association by firing her, at least in part, for off-duty sexual conduct. There are in fact numerous factual disputes over material questions relating to the defendants' motives

in firing Perez. Therefore, the district court was required to deny the defendants' motion for qualified immunity.**[11]**

## B.  Section 1983 claim for violation of due process

Perez also argues that the individual defendants violated her constitutional rights by failing to provide her with "an opportunity to refute the charges or allegations made against

---

**[11]** Defendants contend that Perez has waived any argument on the question whether they are entitled to qualified immunity because she did not address that question in her opening brief. Although we will "not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief," there are three main exceptions to that general rule:

> First, we will review an issue not present in an opening brief for good cause shown, or if a failure to do so would result in manifest injustice. Second, [w]e have discretion to review an issue not raised by appellant . . . when it is raised in the appellee's brief. Third, we may review an issue if the failure to raise the issue properly did not prejudice the defense of the opposing party.

*United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992) (citations and quotation marks omitted) (alteration in original).   Here, all three exceptions apply. The qualified immunity issue was briefed in the defendants' answering brief, and "the discussion of the issue . . . is sufficient to permit an informed resolution of the dispute and its application to [Perez's claim]." *See id.* Furthermore, the defendants suffered no prejudice, as it was clear from Perez's brief that her claim relied wholly upon the right established in *Thorne*. Consequently, we exercise our discretion to review the qualified immunity issue and conclude that the district court erred in granting such immunity to the defendants on this claim.

her and clear her name prior to her termination."[12] As we explained in *Mustafa v. Clark County School District*:

> The termination of a public employee which includes publication of stigmatizing charges triggers due process protections. . . . However, to take advantage of these protections, an employee must show that (1) the accuracy of the charge is contested; (2) there is some public disclosure of the charge; and (3) the charge is made in connection with termination of employment. If a liberty interest is thereby implicated, the employee must be given an opportunity to refute the stigmatizing charge.

157 F.3d 1169, 1179 (9th Cir. 1998) (citations omitted)). "Failure to provide a 'name-clearing' hearing in such a circumstance is a violation of the Fourteenth Amendment's due process clause." *Cox v. Roskelley*, 359 F.3d 1105, 1110 (9th Cir. 2004). This right also applies to probationary employees. *Vanelli v. Reynolds Sch. Dist. No. 7*, 667 F.2d 773, 777 (9th Cir. 1982)).

---

[12] Perez also pleaded a due process violation based on an alleged property interest in continued employment with the Department. As a probationary employee, Perez's property-based due process claim was meritless. *See, e.g.*, *McGraw v. City of Huntington Beach*, 882 F.2d 384, 389 (9th Cir. 1989) ("If McGraw were a mere 'probationary employee' subject to summary 'rejection' pursuant to H.B. Personnel Rules 4–48 and 9–4, the district court's ruling that appellant had no protectable property interest in continued City employment could be affirmed.").

## 1. Constitutional Violation

The defendants do not contend that Perez failed to establish that "the accuracy of the charge is contested" or that the charge has been publicly disclosed via the letter to Leah Begley. But, they argue, and the district court concluded, that Perez had "not presented evidence from which a reasonable inference could be drawn that stigmatizing information about her was published *in connection with her termination*." Perez argues that the Department's August 16, 2012 letter to Leah Begley, which indicated that the charges of "Unsatisfactory Work Performance" and "Conduct Unbecoming" were sustained, constituted public disclosure of stigmatizing information in connection with her termination.

The district court erred in concluding that the letter to Leah Begley was not published "in connection with [Perez's] termination." In reaching this conclusion, the district court required an excessively close nexus between the publication of the charges and Perez's termination. The nexus "element does not require a strict temporal link between the defamation and the nonrenewal or discharge; rather, the defamatory statement must be so closely related to discharge from employment that the discharge itself may become stigmatizing in the public eye." *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 983 (9th Cir. 2002) (citations and quotation marks omitted). In *Ulrich*, for example, this nexus standard was satisfied where the allegedly defamatory statements were made five days *after* that plaintiff was terminated, giving rise to "an implication [with] the potential to make [his] resignation," which he had published over a month earlier, "itself stigmatizing in the eyes of potential employers." *Id.*; *see also Campanelli v. Bockrath*, 100 F.3d 1476, 1483 (9th Cir. 1996) (declining to

establish a bright line test and concluding that nexus requirement satisfied where statements made to press one week after termination); *Tibbetts v. Kulongoski*, 567 F.3d 529, 538 (9th Cir. 2009) (stating that "sixteen months is far too remote from the terminations to meet *Campanelli*'s 'temporal nexus' test," but release issued nineteen days *after* termination was a "more difficult question," therefore the law was not clearly established in that case and terminating official was entitled to qualified immunity).**[13]**

In this case, nineteen days elapsed between publication of the charges and Perez's formal termination, and Chief Hahn made the ultimate decision to terminate Perez just two weeks after the letter to Leah Begley.**[14]** Furthermore, although the district court was correct that Hahn "aver[red]" that the charges in the letter "were not a basis for his decision to terminate" Perez, the district court erred in crediting that testimony as true at summary judgment, despite the

---

**[13]** *See also Mertik v. Blalock*, 983 F.2d 1353, 1363 (6th Cir. 1993) (nexus requirement satisfied where publication occurs "roughly contemporaneously" with adverse employment action); *Ray v. Tenn. Valley Auth.*, 677 F.2d 818, 824 (11th Cir. 1982) ("While we hesitate to set a temporal limit on the relationship between the alleged defamation and the other deprivation action, in this case we find that the long time lapse [of six years] strengthens our conclusion that the alleged defamation was not connected to the employment termination."); *Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 32 (2d Cir. 1994) (determining nexus requirement not satisfied where publication occurred five months after termination).

**[14]** Notably, unlike in *Ulrich*, *Campanelli*, and *Tibbetts*, the stigmatizing statements here were made prior to the termination. *See Fetsch v. City of Roseburg*, No. 6:11-CV-6343-TC, 2013 WL 2631495, at *6 (D. Or. June 11, 2013) ("[U]nlike in *Campanelli* and *Tibbetts* where the stigmatizing statements were made after termination, the City made the stigmatizing statements about plaintiff at the time of his termination.").

conflicting evidence in the record as to whether the results of the IA investigation played a role in his final termination decision. *See* Section III.A.1.a, *supra*. Finally, Perez's formal termination was issued immediately after her administrative hearing in which she contested the charges in the letter. *Cf. Renaud v. Wyo. Dep't of Family Servs.*, 203 F.3d 723, 727 (10th Cir. 2000) ("[A] court must examine both the nature and the timing of an allegedly defamatory statement to determine whether it has been made in the course of an employee's termination."). Where, as here, only a few weeks separate publication of a defamatory statement from an employee's termination, we presume that *Campanelli*'s temporal nexus test is satisfied. Therefore, taking the facts in the light most favorable to Perez and drawing all inferences in her favor, a reasonable jury could well conclude that the letter was published "in connection with her termination."

## 2.  Clearly Established Law

Defendants contend that even if their actions deprived Perez of liberty without due process, they are entitled to qualified immunity. We agree.

Although the district court erred in determining that the Department's letter to Leah Begley was not published in connection with Perez's termination, the law of this circuit did not clearly establish that a letter published nineteen days prior to an employee's termination could bear a sufficient nexus to the employment decision to give rise to a right to name-clearing hearing. In fact, in *Tibbetts*, we explicitly stated that a reasonable public official "could not have known by recourse to then-extant case law whether a stigmatizing statement made nineteen days after Plaintiffs' termination would violate *Campanelli's* temporal nexus test." 567 F.3d at 538. Accordingly, in that case, we granted

qualified immunity without deciding the "difficult question" whether there was a sufficient temporal nexus between the termination and the publication of the stigmatizing information. *See id.* Because we had previously held in *Tibbetts* that an employee's right to a name-clearing hearing was not clearly established where nineteen days had elapsed between termination and publication, Perez's constitutional right to a name-clearing hearing in this case was similarly not clearly established at the time of the defendants' challenged actions. Therefore, we conclude that, regardless of how apparent the violation may have been in this case, and notwithstanding that our holding on this question will lead to a different result in future cases, the defendants are entitled to qualified immunity on Perez's due process claim.**[15]**   Because this purely legal conclusion is unavoidable, it is unnecessary to remand to the district court for its consideration in the first instance.

## C.  Title VII and FEHA

Perez also alleges that she was terminated based on her gender in violation of Title VII of the Civil Rights Act of 1964 and California's FEHA. She vigorously argues, however, that all the complained-of conduct in regard to gender was simply a pretext to justify a discharge that was actually based solely on her having an affair with another officer, a ground for discharge that violated her rights to privacy and intimate association. In view of Perez's

---

**[15]** Because the defendants are entitled to qualified immunity, we express no view on defendants alternative arguments that Perez was not entitled to name-clearing hearing because either (1) the letter to Leah Begley did not contain sufficiently stigmatizing charges; or (2) Perez received all of the process which was due at her September 4 administrative hearing before Chief Hahn.

concession, we affirm the grant of summary judgment on this claim.

## IV.    Conclusion

For the foregoing reasons, we **REVERSE** summary judgment for the defendants on Perez's Section 1983 claim for violation of her rights to privacy and intimate association and **REMAND** for further proceedings on that claim consistent with this opinion.

We **AFFIRM** summary judgment for the defendants on Perez's due process and gender discrimination claims.

**Affirmed in part; Reversed in part; and Remanded.**

---

TASHIMA, Circuit Judge, concurring:

I write separately because, although I ultimately agree with the decision to reverse the grant of summary judgment to defendants on plaintiff Janelle Perez's Fourteenth Amendment privacy claim, I disagree with much of the majority's reasoning on that claim. We should be mindful that Perez was a probationary police officer, which means that under Roseville city policy, the Police Department ("Department") did not have to provide any reasons for terminating her (and initially did not). Still, once litigation began, the Department asserted three reasons for firing Perez. I concur in the reversal solely because those reasons all arose in such short order after the internal affairs review that a reasonable inference may be drawn that they may have

been pretextual.[1]  The majority's other bases for reversing the grant of summary judgment on this claim do not, in my opinion, withstand scrutiny.

## I.  Chief Hahn's "part of" testimony

The majority first relies on Chief Hahn's deposition testimony that Leah Begley's complaint was "part of" his decision to terminate Perez – even concluding that Chief Hahn's testimony alone would preclude summary judgment. Maj. Op. at 12–13.  The majority calls Chief Hahn's answer "inconsistent" with his declaration that Perez's "private, off-duty relationship with [Shad Begley] was not a factor" in her firing.  As I demonstrate below, however, Chief Hahn's statements are not contradictory.  The only part of the affair investigation that factored into the firing was Perez's *on-duty* phone use.

As the majority recognizes, *see* Maj. Op. at 25 ("Begley's wife's complaint alleged *on-the-job* sexual misconduct"), Leah Begley's complaint letter focused on

---

[1] I join in full the majority's analysis of Perez's other claims.  I note, however, that with respect to the due process claim based on the Department's failure to provide Perez with a name-clearing hearing, whether Chief Hahn's letter to Leah Begley was "stigmatizing" is not at-issue on this appeal.  The majority affirms the grant of summary judgment to defendants on this claim on the basis of qualified immunity, assuming that the letter is a "publication of stigmatizing charges." *Mustafa v. Clark Cty. Sch. Dist.*, 157 F.3d 1169, 1179 (9th Cir. 1998). *See* Maj. Op. at 32 n.15.  I doubt that the Chief's August 16, 2012, letter, which, according to the majority, "indicated that the charges of 'Unsatisfactory Work Performance' and 'Conduct Unbecoming' were sustained" constituted publication of stigmatizing information. *Id.* at 29.

potential on-duty conduct by Perez and Shad Begley.[2] The letter precipitated an internal affairs review, after which Perez was reprimanded, initially for "[u]nsatisfactory work performance" and "conduct . . . unbecoming a member of the Department." Lieutenant Walstad's initial "conduct unbecoming" finding resulted explicitly from the affair. As he wrote, "Both Officer[s] are married and have young children," which "reflects unfavorably" on the Department. Captain Moore's subsequent reprimand letter suggested that Perez and Begley's on-duty phone use "interfere[d] in their work performance" and "reflected negatively" on the Department, but did not mention any off-duty conduct.

Chief Hahn, the final decisionmaker, did not sustain either of internal affairs' findings. He rejected the work performance finding because, he testified, "I didn't see anything in the internal affairs report that could prove that . . . something didn't get done that should have got done." Chief Hahn rejected the conduct unbecoming finding for similar reasons:

> Well, one, a lot of the allegations in the original complaint were things happening on duty, and none of those were proven that they happened on duty. So now we're just dealing with off-duty conduct, and I didn't see any off-duty conduct that affected morale or standing of the department kind of thing.

---

[2] The letter stated, in part: "I also want to report this situation to you and other Roseville officials as I believe the citizens and taxpayers of Roseville have been cheated by the conduct of Officers Begley and Perez *during the time they were on duty* and sworn to be spending 100% of their time serving the City of Roseville." (Emphasis added.)

Asked whether the extramarital nature of the affair "ha[d] anything to do with your decision making," Chief Hahn said, "No. Absolutely not." Accordingly, to the extent that Walstad and Moore initially recommended discipline based on Perez's protected *off-duty* conduct, Chief Hahn explicitly rejected that rationale.

Instead, Chief Hahn determined that Perez's on-duty personal phone use violated the Department's phone policy, and so wrote in a post-firing letter to Perez. He testified that Perez's phone use was the only "fact[] contained in the internal affairs investigation" that factored into her firing.

Accordingly, when Chief Hahn testified "yes," that the Leah Begley letter and investigation were "part of" his decision to fire Perez, he could *only* have been referring to the phone policy violation. He expressly repudiated the other findings in his reprimand of Perez, statements to subordinates, and deposition testimony.

## II.  Statements of subordinate officers

Next, the majority concludes that the court may impute Lieutenant Walstad's and Captain Moore's bias against Perez to the Department because, although subordinates, they were involved in Perez's firing. Maj. Op. at 13–14. Walstad and Moore each reviewed the internal affairs investigation report and recommended that the Department discipline Perez. Chief Hahn's independent decision, however, cut off any causal nexus between those officers' apparent bias and Perez's firing.

Under our precedent, the court may impute bias to an employer "if a subordinate, in response to a plaintiff's protected activity, sets in motion a proceeding by an independent decisionmaker that leads to an adverse

employment action . . . [and] the biased subordinate influenced or was involved in the decision or decisionmaking process." *Poland v. Certoff*, 494 F.3d 1174, 1182 (9th Cir. 2007). *Poland* was a retaliation case; thus, it is not a perfect match for Perez's claims. Still, *Poland*'s overall point applies: there can be a causal nexus even where an unbiased supervisor makes the ultimate employment decision, if a biased subordinate had a "pervasive" influence on the disciplinary process. *Id.* at 1183. However, "if an adverse employment action is the consequence of an entirely independent investigation by an employer, the animus of the retaliating employee is not imputed to the employer." *Id.* Thus no nexus exists if the subordinate's influence is not "pervasive" or the employer's decision is sufficiently independent.

Here, there are indicia that at least Walstad, and maybe Moore, were biased. Walstad, who first reviewed the internal affairs investigation, testified that the affair was inappropriate because both Perez and Begley were married with young children. He recommended sustaining discipline because the officers were married and should model ethical conduct to maintain "the trust and respect of those who are served." Moore, who reviewed Walstad's recommendations, testified that the affair "present[ed] a truly ethical dilemma whether or not that is something that could reflect unfavorably on our police department."

Despite these indicia of bias, however, the causal nexus between both officers' actions and Perez's eventual termination is virtually nonexistent. Each officer participated in the internal affairs review strictly in the course of his normal duties. Neither requested the investigation. As explained at length above, Chief Hahn explicitly rejected Walstad's and Moore's recommendations

to the extent they were based on off-duty sexual conduct, instead determining that Perez violated only the Department's phone use policy.  At some later point, Moore was told of Chief Hahn's decision to terminate Perez, and Moore may have agreed (the record is unclear), but the final decision was Hahn's alone.  In that respect, this case resembles *Lakeside-Scott*, in which the allegedly biased subordinate initially reported an employee's conduct, but the employee's termination resulted from a subsequent investigation on which the subordinate had no influence. *Lakeside-Scott v. Multnomah Cty.*, 556 F.3d 797, 805–06 (9th Cir. 2009).  The court found no causal nexus.  *Id.*

Similarly, in *Vasquez*, we found no causal nexus between a subordinate's discriminatory remarks to a coworker, complaint to a superior about the coworker, and the coworker's subsequent demotion.  *Vasquez v. Cty. of L.A.*, 349 F.3d 634 (9th Cir. 2003), *as amended* (Jan. 2, 2004).  In the intervening time, as here, the supervisor "conducted her own thorough investigation" and determined that a demotion was warranted.  *Id.* at 640.

Accordingly, no reasonable juror could conclude that either Walstad or Moore "influenced, affected, or were involved in" Perez's firing when Hahn explicitly rejected their reasoning and recommendations.  *Poland*, 494 F.3d at 1183; *compare France v. Johnson*, 795 F.3d 1170, 1176 (9th Cir. 2015), *as amended on reh'g* (Oct. 14, 2015) (imputing bias because supervisors adopted biased subordinate's recommended finalists for promotion).

## III.    Pretextual reasons

Lastly, the majority holds that a jury could find the Department's stated reasons for firing Perez were pretextual because they all arose shortly after the affair investigation.

I agree that under our controlling case law, the timing of the proffered reasons raises a triable issue.

As a preliminary matter, the Department did not need to provide any reason for firing Perez, who was hired as a probationary police officer.  The Department could summarily dismiss Perez for no reason at all or for a frivolous, non-protected reason.  Per Roseville city policy, a probationary employee "may be released from City service without cause at the sole discretion of the City."  Chief Hahn testified that if a probationary officer has "done something egregious enough to get disciplined in that period of time where they are supposed to be on their best behavior," firing is advisable even without a response from the officer.  The majority does not grapple with or even address this issue in its analysis of Perez's privacy claim.

At least initially, Chief Hahn did not provide any reason for terminating Perez.  However, the Department provided several reasons in the course of this  litigation.  In his declaration, Chief Hahn said he terminated Perez due to a shift trade dispute, a civilian complaint, and an officer's complaint that Perez was not getting along with other female officers.[3]  A plaintiff may defeat summary judgment by showing that the defendant's proffered reasons lack credence or are pretextual.  *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 753 (9th Cir. 2010).

Although the majority states there is evidence that all three of the Department's reasons lack credence,  Maj. Op. at 16, I am not convinced that this record supports such a

---

[3] As noted above, Chief Hahn also testified that Perez's phone policy violation factored into his decision.

conclusion.  The majority contends the informal complaint that Perez was not getting along with other female officers "was made only after her affair became known."  Maj. Op. 17.  Yet, there is not evidence the complainants knew of the affair or the investigation.[4]  It is undisputed that Perez worked with some female officers, including the officer who complained.  As for the civilian complaint, the Department did not investigate it because the civilian did not wish to pursue the matter further.  Given the nonexistent threshold for firing a probationary officer, Chief Hahn could rely on an unsubstantiated complaint.  The same holds true for the shift trade dispute.  Moreover, the other officer's sense upon being asked to write a memo about the dispute that "something was going on" is not "evidence that an employer[] deviat[ed] from established policy or practice," *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1117 (9th Cir. 2011), but rather of the officer's realization that Perez might be under investigation.  None of the three reasons lacks credence, particularly in light of the no-cause standard for firing a probationary officer.

Under normal circumstances, the timing of the proffered reasons would preclude summary judgment.  The complaints all arose in the very short period between the internal affairs review and Perez's appeal hearing, which creates an inference of pretext, as the majority notes.  *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).  But in the context of terminating a probationary employee, the inference is not as compelling, because in that context, no reason at all need be proffered for the termination and often

---

[4] There is no evidence in the record that the internal affairs investigation, or the affair itself, were "known" within the Department. Indeed, the senior officer who documented the shift trade dispute was unaware of the internal affairs investigation at the time.

one isn't provided at the time, as in this case. In the usual non-probation case a close-in-time pretextual reason is offered because some reason is required to be given for the personnel action. Here, specific reasons were offered for the termination only because litigation had been instituted. Thus, it is the ordinary course of events that when a probationary employee is terminated, no reason is proffered. As in this case, a reason for the termination will be offered only if the termination is challenged in an administrative or judicial proceeding. Thus, if a justification for terminating a probationary employee is ever called for, it would be in circumstances post-termination and close in time to the termination. These circumstances call for the exercise of caution when applying the close-in-time-equals-pretext *Yartzoff* rule; but they do not mean that the rule should not be applied at all when probationary employees are involved.

Here, Chief Hahn knew early on of Perez's affair. He was told about the civilian complaint even though no investigation occurred. There is also a factual dispute over whether Chief Hahn or a different officer instructed Newton to write the shift trade dispute memo. Ultimately, the timing of these three bases permits the inference that Chief Hahn wished to conceal an improper motive with legitimate explanations. Of course, Chief Hahn said he was trying to determine "what kind of employee [Perez] was" before the appeal hearing, which might account for the timing of the three reasons. However, resolving this dispute – whether the proffered reasons for Perez's termination were pretextual – is for the jury to decide.

Accordingly, on this basis alone, I concur in the majority's reversal of summary judgment in favor of defendants on Perez's Fourteenth Amendment privacy claim.